UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HUBER WINERY, et al.                                                                                    PLAINTIFFS

v.                                                                        CIVIL ACTION NO. 3:05-CV-289-S

LAJUANA S. WILCHER, et al.                                                                       DEFENDANTS

and

WINE AND SPIRITS WHOLESALERS OF
KENTUCKY, INC.                                                                       INTERVENING DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on various motions. The plaintiffs, Huber Winery, a division of Huber Orchards, Inc., William G. Schneider, Jr. and John D. Reilly, Jr. ("plaintiffs"), have moved for judgment on the pleadings while the defendants, Lajuana S. Wilcher and Lavoyed Hudgins, in their official capacities as Secretary of the Kentucky Environmental and Public Protection Cabinet, and Executive Director of the Kentucky Office of Alcoholic Beverage Control, respectively ("state defendants"), have filed a motion to dismiss. The intervening defendant, Wine and Spirits Wholesalers of Kentucky, Inc. ("Wine and Spirits Wholesalers") has joined in support of the state defendants' motion to dismiss and in opposition to the plaintiffs' motion for judgment on the pleadings. Additionally, the plaintiffs seek leave to file an amended complaint and the state defendants request leave to file a document received by them in discovery. The Kentucky Beer Wholesalers Association, Inc. ("KBWA") has filed a motion to intervene in the instant case, which is opposed by both the plaintiffs and the state defendants. The state defendants have also filed a motion to strike the plaintiffs' notice of filing that a rule relied upon by the defendants has been voided.

In this case, the plaintiffs challenge several Kentucky statues, asserting that they violate the commerce clause of the United States Constitution. For the reasons set forth below, the defendants'

motion to dismiss will be **DENIED**. The plaintiffs' motion for leave to file an amended complaint will be **GRANTED** and the tendered complaint will be so entered. The defendants' motion for leave to file a document received by them will be **GRANTED** and the document will be entered into the record. The KBWA's motion to intervene will be **DENIED**. The state defendants motion to strike the plaintiffs' filing will be **DENIED**. The court will reserve consideration on the plaintiffs' motion for judgment on the pleadings until after the court has heard oral arguments from the parties on the substance of the motion. The court will discuss each motion separately.

## FACTS

The plaintiffs have challenged the constitutionality of Kentucky's scheme for regulating the manufacture, sale and delivery of wine. Specifically, they claim that KRS §§ 243.032, 243.155, 243.156, and 244.165 violate the commerce clause by discriminating against out-of-state wineries. Huber Winery in Starlight, Indiana is located just across the river from Louisville, Kentucky. The winery has received many requests from consumers to ship wine to their homes in Kentucky. *See Plaintiffs' Complaint* (DN 1), ¶3. Huber wishes to comply with these requests. Mr. Schneider and Mr. Reilly, the two individual plaintiffs, are Kentucky residents who desire to receive shipment of Huber's wine. The plaintiffs argue that Kentucky's statutory scheme represents the only barrier to these transactions. They have filed a motion for judgment on the pleadings based upon the recent ruling in *Granholm v. Heald*, – U.S. – , 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005) where the Supreme Court struck down New York and Michigan laws which discriminated against interstate commerce by prohibiting or imposing additional burdens on out-of-state wineries seeking to ship wine directly to New York and Michigan consumers. The plaintiffs maintain that *Granholm* compels the same outcome in the instant case, arguing that the statutory schemes have similar effects.

The Kentucky legislature has established a three-tiered system of distribution involving manufacturers, wholesale distributors and retailers. As the law presently stands, wineries must sell their wine to wholesalers who then sell to retailers who sell directly to the consumers. Kentucky law

provides certain licenses to qualified wineries, allowing them to bypass this system. Huber maintains that it is ineligible for these licenses under KRS §§ 241.010(22) and (45), simply because it is not located in Kentucky or does not use Kentucky fruit, juices or honey to produce its wine. Since the Wine and Spirits Wholesalers has a direct interest in the three-tiered system being challenged, it has intervened to protect that interest. The KBWA has also filed a motion to intervene, claiming an interest in the "integrity" of the three-tiered system as a whole.

The state defendants have filed a motion to dismiss, asserting that the plaintiffs do not have standing and that the issues are not ripe for review. The state defendants argue that the plaintiffs have not suffered an injury because they have not violated the law and the state has not penalized them under the statutes challenged here. They also interpret Indiana law as prohibiting Huber from shipping its wine, arguing that even if Kentucky law permitted such transactions, Huber still could not ship to Kentucky residents.[1] Therefore, they insist that Kentucky laws are not the cause of the plaintiffs' purported injury. While the plaintiffs reject that interpretation, they have requested leave to amend their complaint to add a new plaintiff, Cherry Hill Winery, which is located in Oregon. Under Oregon's laws, Cherry Hill could ship to Kentucky residents but for Kentucky's prohibition of such importation. The plaintiffs maintain that adding Cherry Hill would circumvent the need to address the state defendants' tangential argument concerning Indiana law.

## DISCUSSION

### I. Motion to Dismiss

The state defendants have filed a motion to dismiss, asserting that this court lacks subject matter jurisdiction. As the Wine and Spirits Wholesalers has joined in support of this motion to dismiss, the court will refer to the state defendants and the intervening defendant collectively as the

---

[1] The state defendants have requested leave to file a document sent by the Chairman of the Indiana Alcohol & Tobacco Commission, which they claim supports this position. The plaintiffs have filed a notice that the purported rule contained in this document has been enjoined by an Indiana court and the state defendants have filed a motion to strike the plaintiffs' notice of filing.

- 3 -

"defendants." To meet the requirements of an Article III case or controversy, certain procedural hurdles must be overcome. The defendants argue that two of these, namely ripeness and standing, are absent. They also urge the court to dismiss this case by invoking "Pullman abstention." Their response to Huber's motion for judgment on the pleadings, which the state defendants have incorporated into their motion to dismiss, focuses primarily upon these alleged jurisdictional defects. Since the court must have subject matter jurisdiction to entertain the remaining motions, the court considers the motion to dismiss first.

### A. Ripeness

The doctrine of ripeness allows the federal courts to refrain from prematurely deciding cases that present merely hypothetical or abstract issues. In determining questions of ripeness, the court applies the well-established test, which considers "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507 18 L.Ed.2d 681 (1967), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

For the claim to be "fit for review," the plaintiffs must have standing and the issue must be "a purely legal one." *Id*. The instant case is fit for review because, as discussed in the following section, the plaintiffs do have standing. Furthermore, the construction of a statute presents a purely legal issue. Here, the court must construe the statutes in question to determine whether they run afoul of the commerce clause, a purely legal inquiry.

Withholding court consideration would produce a hardship sufficient to overcome the second prong of the test. The enforcement of the challenged laws, particularly in light of the recent *Granholm* decision, has a direct effect upon the plaintiffs. They must either comply with the law, which they argue is unconstitutional, or risk the penalties associated with noncompliance. In *Abbott*, the Supreme Court found just such a dilemma sufficient to constitute the requisite "hardship to the parties" where drug manufacturing companies were required to reprint labels, advertisements, and other material to

comply with an agency's regulation. *See Abbott*, 387 U.S. at 152-53. The Sixth Circuit Court of Appeals also reached the same conclusion in a case with similar facts. *See National Rifle Ass'n of America v. Magaw*, 132 F.3d 272 (6th Cir.1997) (NRA was faced with either incurring substantially increased costs to redesign products or risking the prospect of heavy penalties associated with noncompliance).

In fact, the instant case represents one of the few situations where pre-enforcement review of a statute is warranted. This exception occurs when a party would, "in the absence of court review, be faced with a choice between risking likely criminal prosecution entailing serious consequences, or forgoing potentially lawful behavior." *Thomas v. City of New York*, 143 F.3d 31, 35 (2nd Cir. 1998).[2] KRS §244.165 provides that an out-of-state seller who ships directly to a Kentucky consumer commits a Class D felony, placing Huber and any other out-of-state winery in just such a predicament. The court will not require Huber to commit a felony in order to challenge this law. "[A] citizen should be allowed to prefer 'official adjudication to public disobedience.'" *Magaw,* 132 F.3d at 287 (quoting 13A, Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3532.5 at 183-84 (2nd ed.1984)).

In both *Abbott* and *Magaw*, the challenged regulations had been newly adopted. While the laws at issue in the instant case have been on the books for some time, the plaintiffs maintain that the recent *Granholm* ruling places the laws in a new light. This court finds the situations analogous. The challenged law "has a direct effect on the day-to-day business" of the plaintiff. *Abbott,* 387 U.S. at 152. As in *Abbott,* "to require [the plaintiffs in the instant case] to challenge these [law]s only as a

---

[2]The *Thomas* court dismissed the plaintiffs' procedural due process claims as not ripe for judicial review, but addressed the merits of their equal protection and substantive due process claims finding those challenged statutory provisions equivalent to discriminatory "requirements" or "preconditions" for base station licenses. *See Thomas*, 143 F.3d at 35-36. Similarly, the plaintiffs' claims in the instant case challenge statutory licensing requirements as discriminating against them in violation of the commerce clause. *See, e.g.*, KRS §241.010 (22), (45) (defining eligible licensees as those sellers located in Kentucky or making wine from Kentucky fruit, juices or honey).

defense to an action brought by the Government might harm them unnecessarily." *Id*. at 153. Postponing the present challenge "would work a substantial hardship, requiring the . . . loss of substantial amounts of money, which could not be recovered if the law were eventually struck down." *Magaw,* 132 F.3d at 286. If Kentucky law permitted Huber to ship directly to its residents, Huber would profit from sales to the many would-be buyers who have requested that Huber ship wine to Kentucky. Even if Huber committed the offense and was spared criminal prosecution based on its constitutional challenge, its harm would not be fully remedied. "A defense in criminal proceedings on constitutional grounds does not provide an adequate remedy for the economic injury incurred." *Magaw,* 132 F.3d at 287 (quoting *Abbott,* 387 U.S. at 153).

B. Standing

In the seminal case of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court set forth a three-pronged test to determine standing, one of the procedural prerequisites for subject matter jurisdiction. To prove that a plaintiff has standing, he must demonstrate that: (1) he suffered an injury in fact which is (a) concrete and particularized and (b) actual or imminent; (2) there was a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision. *See id.* at 560-61.

The plaintiffs satisfy each element of standing. First, they have suffered an injury in fact;[3] specifically, "a denial of their right to engage in interstate commerce because of the threatened enforcement of [the relevant statutory provisions] against them and because of the threatened enforcement of [the relevant statutory provisions] against their would-be vendors." *See Dickerson v. Bailey*, 87 F.Supp.2d 691, 702 (S.D. Tex) (Texas oenophiles successfully challenged the constitutionality of a statute prohibiting direct wine shipment from out-of-state suppliers to Texas

---

[3] For purposes of considering standing, the court examines the injuries as alleged in the plaintiffs' claims. While the plaintiffs have sufficiently plead an injury caused by the prohibitions contained in the relevant Kentucky statutes, **the court reserves judgment on whether those challenged provisions unconstitutionally discriminate against the plaintiffs in violation of the commerce clause.**

residents). Not only have the individual plaintiffs suffered this injury,[4] but so has Huber, the would-be vendor. Huber suffers a "concrete commercial injury" in that it is forbidden from shipping wines to Kentucky buyers, thus robbing out-of-state wineries of those potential profits. *Magaw,* 132 F.3d at 282. "'An economic injury which is traceable to the challenged action' satisfies the requirements of Article III standing." *Id.* (quoting *Linton by Arnold v. Commissioner of Health and Environment, State of Tenn.*, 973 F.2d 1311, 1316 (6th Cir. 1992)). Furthermore, the prohibition contained in one of the challenged statutes is directed towards out-of-state wineries. *See* KRS §244.165 (entitled "Unlawful sale and shipment by out-of-state seller directly to a Kentucky consumer"). In *Magaw,* the Sixth Circuit Court of Appeals found that gun manufacturers and dealers satisfied the standing requirements[5] to challenge a regulation that was "directed at them in particular." *Id.*

The causal connection is also evident in the case at bar. The plaintiffs trace their injury to the challenged statutes because Huber's "coerced obedience to [those] provision[s] prohibits [the] [p]laintiffs' enjoyment of their rights." *Dickerson,* 87 F.Supp. at 701. If the Kentucky statutory

---

[4] "[C]ognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates, and customers of that class may also be injured, as in this case where" the would-be customers' access to out-of-state wine is limited by the state laws. *See General Motors Corp. v. Tracy*, 519 U.S. 278, 286, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997). "Consumers who suffer this sort of injury from regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III." *Id.* (citing *Lujan*, 504 U.S. at 560-61). The court notes that, in *Dickerson*, the Texas law contained two separate prohibitions: one preventing Texas consumers from importing more than three gallons of wine for personal use and the other preventing out-of-state sellers from shipping into the state. However, the court determined that the consumers had standing to challenge both laws. Likewise, the consumers in the instant case have standing to challenge the laws prohibiting Huber from shipping to them. As the *Dickerson* court noted, "the interests of [the] [p]laintiffs and out-of-state wine sellers are inextricably intertwined and to a large extent, one in the same in terms of effect." *Id.* at 704.

[5] The *Magaw* court determined that the individual consumer plaintiffs did not satisfy the standing requirements. *See Magaw*, 132 F.3d at 293-94. The court noted that these plaintiffs alleged "merely that they would like to engage in conduct, which *might* be prohibited by the statute" and that they failed to meet the requirements because "fear of prosecution is the *only* harm alleged." *Id.* (emphasis added). Conversely, the plaintiffs in the instant case cannot purchase wine from an out-of-state winery that does not have a valid license. As already noted, the plaintiffs' injury rests not only in their fear of prosecution but also in their limitation on access to wine sold in interstate commerce - the exact same injury recognized as sufficient to confer standing on the plaintiffs in *Dickerson.*

- 7 -

scheme did not prohibit direct shipment to Kentucky residents, Huber could ship to buyers in Kentucky and the individual plaintiffs could receive shipments from out-of-state wineries. Likewise, a favorable decision would redress the plaintiffs' injury. *See id.* at 704. Should this court declare the challenged provisions unconstitutional in violation of the commerce clause, the plaintiffs would be placed on equal footing with the instate vendors, thus eliminating the discrimination.

However, the state defendants contend that the plaintiffs lack standing because Indiana law bans wine shipment to consumers, arguing that the critical elements of causation and redressability are absent. They claim that, even if Kentucky allowed shipment to its residents, Huber could not sell directly to the individual plaintiffs because Indiana law prohibits such shipment. To support this assertion the state defendants cite only one document: a letter sent to Indiana farm wineries from David Heath, Chairman of the Indiana Alcohol & Tobacco Commission ("ATC").[6] This letter states in pertinent part:

> It has come to our attention that wineries in Indiana may be engaged in selling wine by taking orders via internet, mail, and/or telephone and directly shipping to the consumers address. This method of sale is contrary to Indiana law. Indiana Code §7.1-3-12-5 dictates that your winery is *only* "entitled to sell the winery's wine on the licensed premises to consumers either by the glass, or by the bottle, or both."
>
> In addition, Ind. Code §7.1-5-1-9.5 states that "an *instate* or an out of state vintner . . . who knowingly violates IC §7.1-5-11-1.5 commits a Class A Misdemeanor." Ind. Code §7.1-5-11-1.5(a) states that "it is unlawful for a person in the business of selling alcoholic beverages in another state or country to ship . . . an alcoholic beverage directly to an Indiana resident who does not hold a valid wholesaler permit under this title . . ." Therefore, selling wine off the licensed premises, including shipping wine to a consumer's address, is in violation of Indiana law.

(emphasis added in original).

While Indiana law is not being challenged in this case, the court must examine the relevant provisions cited above for the limited purpose of considering the defendants' standing argument. First, Ind. Code §7.1-3-12-5 does not explicitly state that farm wineries are *only* entitled to sell on the

---

[6] The Marion Superior Court has enjoined the Indiana regulators from enforcing the ban which the letter purports to impose. *See S.L. Thomas Family Winery, Inc., et al. v. Heath, et al.,* Cause No. 49D060511PL045032 (Superior Court of Marion County, Indiana, Nov. 23, 2005).

licensed premises. That statute merely contains a list of acts specifically authorized under a farm winery license. The language neither prohibits nor permits shipment of wine. Additionally, the letter mischaracterizes the effect of Ind. Code §7.1-5-1-9.5 upon Ind. Code §7.1-5-11-1.5. Ind. Code §7.1-5-1-9.5 states that instate or out-of-state vintners who violate Ind. Code §7.1-5-11-1.5[7] commit Class A misdemeanors. However, Ind. Code §7.1-5-11-1.5, by its express terms, applies only to out-of-state vintners: "It is unlawful for a person *in the business of selling alcoholic beverages in another state or country . . .*" (emphasis added). Additionally, the statute only prohibits shipment to instate consumers: ". . . to ship or cause to be shipped an alcoholic beverage *directly to an Indiana resident*" (emphasis added). This statute deals with *importation of wine to Indiana residents,*[8] whereas, in the instant case, Huber seeks to *export wine to Kentucky residents*. As the prohibition contained in Ind. Code §7.1-5-11-1.5 is simply inapplicable to the situation at bar, Chairman Heath's letter has no effect on the plaintiffs' standing. Furthermore, the Marion County court ruling enjoins the ATC from enforcing the letter's purported ban, thus permitting Indiana wineries to ship wine instate as they had prior to the issuance of this letter.

The defendants' also challenge the plaintiffs' standing because Huber has not been cited for violating the relevant laws and the individual plaintiffs have not had wine shipped to them in violation of those same laws. To support this contention, the defendants rely heavily upon *Poe v. Ullman,* 367 U.S. 497 (1961). In *Poe*, the Supreme Court dismissed a case challenging the constitutionality of several Connecticut statutes which criminalized the importation of certain contraceptive devices. The

---

[7] Interestingly, the language of Ind. Code §7.1-5-11-1.5 mirrors that of KRS §244.165, which the plaintiffs challenge as violative of the commerce clause.

[8]*See Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 853 (7th Cir. 2000). The Seventh Circuit Court of Appeals summarized the relevant laws as such: "Indiana permits local wineries, but not wineries 'in the business of selling . . . in another state or country', to ship directly to Indiana consumers." *Id*. at 851. The court notes that the plaintiffs in *Bridenbaugh* challenged the constitutionality of Ind. Code §7.1-5-11-1.5 and that *Granholm* may have implicitly overruled this case. The court cites *Bridenbaugh* for the limited purpose of interpreting the statute as one regulating *importation* only, as opposed to the complete "ban" suggested by the defendants.

*Poe* Court determined the plaintiffs lacked standing because their harm was not immediate, a conclusion rooted in evidence of previous non-prosecution: "[t]he fact that Connecticut has not chosen to press the enforcement of this statute deprives these controversies of the immediacy which is an indispensable condition of constitutional adjudication." *Id.* at 508. The opinion noted that "contraceptives are commonly and notoriously sold in Connecticut drug stores . . .[y]et no prosecutions are recorded." *Id.* at 502. In contrast, the record evidences no such nullification of the laws challenged in the present case. While the defendants explain that the ABC rarely issues warning letters or takes enforcement action,[9] they fail to present any evidence of *actual violation* of the laws. In *Poe*, the contraceptives were openly sold, but nothing indicates that wineries and wine purchasers regularly violate the statutes challenged here. The obvious nullification present in *Poe* distinguishes it from the instant case.

C. Pullman Abstention

Citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941), the state defendants caution this court not to "interfere when a state action may obviate the federal question." *State Defendants Response to Plaintiffs' Motion for Judgment on the Pleadings* (DN 24), p. 18. The state defendants urge the court to dismiss the case based on the landmark *Pullman* decision. Initially, the court notes that the well-known "*Pullman* abstention" would be more precisely named the *Pullman* "deferral." *See Growe v. Emison*, 507 U.S. 25, 32 (1993). Should the court accept the defendants' argument, it would merely postpone consideration on the merits, not dismiss the suit entirely.

Nonetheless, *Pullman* is not applicable to the case at bar. *Pullman* and its progeny reason that a federal court should "'sta[y] its hands,' when a constitutional issue in the federal action will be mooted or presented in a different posture following the conclusion of the *state-court case*." *Id.* (citing *Pullman*, 312 U.S. at 501) (emphasis added). There is no such state court case pending in the instant

---

[9] The ABC's regulatory scheme provides for issuance of an administrative citation and a cease and desist letter, as well as an opportunity for a hearing *prior to* any criminal prosecution pursuant to KRS §244.165. *See* KAR 4:330.

- 10 -

matter. Likewise, there are no related proceedings pending in an administrative agency. The defendants point out the there was no *concurrent* state court proceeding in *Pullman*. There, the Court instructed the parties to bring a state action, directing the district court to withhold determination until the conclusion of such state proceedings. *See Pullman*, 312 U.S. at 501-02. There was an underlying issue of state law, which the Court deemed appropriate for the state courts to resolve prior to consideration of the constitutional issue.

*Pullman* involved two separate issues: (1) the constitutionality of an order by the state railroad commission and (2) the authority of the commission to promulgate that order. In the case at bar, the only inquiry involves the constitutionality of the challenged statutes. The *Pullman* Court determined that a "definitive ruling in the state courts" on the railroad commission's statutory authority to promulgate the challenged order was necessary. *Id*. at 501. The Court stated that "if there was no warrant in state law for the Commission's assumption of authority[,] there is an end to the litigation; the constitutional issue does not arise." *Id.* This court needs no such definitive ruling from the state courts on any purely state issue, the resolution of which may moot the constitutional one. The constitutionality of the statutory scheme is a federal question, which does not hinge on any state law question.

Furthermore, the defendants insist that the legislature should be allowed adequate time to reconsider its laws in light of *Granholm*.[10] This contention is simply not appropriate in the context of *Pullman* abstention, which necessarily involves an available state *adjudicative proceeding*. The *Pullman* Court did not indicate that federal courts should also abstain to provide a legislature an opportunity to re-evaluate its laws.

The defendants also ask the court to abstain until Huber applies for a "small winery" license in Kentucky, arguing that the ABC could resolve this issue by applying the statutory scheme in a way

---

[10] The state defendants also inform the court that a new senate bill, "concerning the case of *Granholm v. Heald,* ___ U.S. ___, 125 S.Ct. 1885 (2005)" has recently been introduced. *State Defendants' Reply to Their Motion to Strike Plaintiffs' Notice of Filing* (DN 56), p. 1.

that is constitutional. The court will not require Huber to apply for such a license because a small winery is defined as one which makes its wine from Kentucky fruit, juices or honey, a prerequisite that Huber does not appear to meet. *See* KRS §241.010(45). Under the laws as they stand, requiring Huber to apply for such a license would be meaningless. This court need not refrain from considering a constitutional challenge to a current law simply because the state legislature is re-evaluating that law or because a state administrative agency indicates that it may dispense with certain requirements found in the challenged statutory scheme.

Because the court finds that the plaintiffs have standing to bring the suit and that the issues are ripe for judicial review, the court will deny the defendants' motion to dismiss for lack of subject matter jurisdiction. Accordingly, the court will address the remaining motions below.

## II. Motion for Leave to File Amended Complaint

Pursuant to Federal Rule of Civil Procedure 15, the plaintiffs have requested leave to amend their complaint by adding a new party, Cherry Hill Winery, which is located in Oregon. As previously discussed, the defendants maintain that Indiana law prevents Huber from shipping wine to consumers. Oregon law, however, permits such shipment: a holder of a winery license is entitled to "import, bottle, produce, blend, store, transport *or export* wines or cider." Ore. Rev. Stat. §472.223 (emphasis added). Thus, an Oregon winery licensee may ship out-of-state, provided that the destination state allows such direct shipment to consumers.

The intervening defendant suggests that an Oregon winery "will fare no better than [it would] under Indiana law." *Wine and Spirits Wholesalers Response to Plaintiff's Motion for Leave to File Amended Complaint* (DN 43), p 2. This is a curious assertion because the defendants argue that Indiana law bans shipment by its wineries, preventing Huber from meeting the causation and redressability requirements of the standing doctrine. Yet, the plain language of Oregon's law allows its wineries to export wine. The difference in the statutory schemes is clear. The intervening defendant cites several provisions under Oregon law, concluding that "Cherry Hill could not qualify as a winery in Kentucky

for the same reason that a Kentucky small winery could not qualify as an Oregon winery." *Id.* at 4-5. This argument misses the point. Oregon law is not at issue. The relevant inquiry is simply whether Oregon law permits its wineries to export wine to Kentucky residents, thus avoiding the issue of the purported ban on shipping under Indiana law.[11]

The determination of whether to grant leave under Rule 15 rests within the sound discretion of this court. *See Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000). The court should construe Rule 15 liberally, always striving to decide cases on their merits rather than on technicalities. *See Cooper v. American Emp. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961); *United States v. Hougham,* 364 U.S. 310, 317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960). In fact, the rule itself says that "leave [to amend the complaint] should be freely given when justice so requires." The Sixth Circuit has also held that "[l]iberality in amendments [i]s encouraged and favored, where no prejudice or disadvantage was suffered by the opposing side." *Cooper*, 296 F.2d at 306. Courts have determined that denial of leave to amend the complaint is appropriate in limited circumstances "where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Miller v. Champion Enterprises Inc.,* 346 F.3d 660, 690 (6th Cir. 2003) (internal citations omitted). None of these is present in the instant case.

First, both parties agree there has not been repeated failure to cure deficiencies. Second, the amendment would not be futile. The state defendants insist it is futile because the plaintiffs lack standing to bring the instant suit, which they also claim is not ripe for review. The court has already denied the defendant's motion to dismiss based on this same argument. Third, nothing in the record evidences bad faith by the plaintiffs. They clearly state the reason for adding Cherry Hill: to moot the "meritless procedural issue" raised by the defendants alleging that Indiana law bars Huber from

---

[11]The defendants' other standing and ripeness arguments apply equally to Huber and Cherry Hill, and have already been resolved in the court's opinion on the motion to dismiss.

shipping its wine. *Plaintiffs' Reply to Response to Motion for Leave to File Amended Complaint* (DN 49), p. 2. Lastly, adding Cherry Hill will not unduly prejudice the defendants. Cherry Hill presents the same substantive issues as Huber; the defendants will not have to address any new claims or legal issues. The defendants assert that the new party causes prejudice because they would rather defend Cherry Hill's claims in a more convenient venue. While they waived an objection to this court's venue earlier, the state defendants claim they would have objected if Cherry Hill were originally a plaintiff. Because the substantive issues remain the same, the court finds this argument unpersuasive. In fact, adding Cherry Hill prevents Huber from defending two lawsuits, which present the exact same issues, in separate places.

The defendants argue that filing for leave to amend the complaint under Rule 15 is not the appropriate mechanism to add a new party. Notably, they fail to highlight any legal authority explaining why parties may not be added by a motion for leave to amend the complaint. They merely suggest the proper procedural device would be Rule 20, which permits joinder of parties when the parties' claims arise from the same transaction or occurrence and share common questions of law or fact. Rule 20 is one vehicle for joining parties, but the rules do not indicate it is the exclusive mechanism. In fact, at least three separate rules – Rule 15, Rule 20, and Rule 21 – have been utilized to add new parties. *See, e.g.*, *Hacker v. Guaranty Trust Co. of New York*, 117 F.2d 95, 98 (2d Cir. 1941) (allowing addition of new plaintiff even though original plaintiffs failed to meet the required jurisdictional amount, noting that a party may be added "whether the matter is treated as one of amendment or of power of the court to add or substitute parties, Federal Rule 21, or of commencement of a new action by filing a complaint with the clerk, Rule 3."); *M.K. v. Tenet*, 216 F.R.D. 133 (D.D.C. 2002) (permitting the addition of plaintiffs through an amended complaint); 6 *C. Wright & A. Miller, Federal Practice and Procedure* §1479, at 400-402 (1971) (noting that both Rule 15 and Rule 21 apply when one party attempts to change the parties to the suit). Rule 21 specifically states that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any

stage of the action and on such terms as are just." All three of these rules are designed to promote the goals of justice and efficiency, permitting the court to add parties when it would serve these goals.

In fact, *Summit Office Park, Inc. v. U.S. Steep Corp.,* 639 F.2d 1278 (6th Cir. 1981), a case cited by the defendants for the proposition that a plaintiff who lacks standing to bring the suit also lacks standing to amend the complaint,[12] illustrates that additional plaintiffs may be added pursuant to Rule 15. The *Summit* court did not grant leave to amend the complaint; yet, the decision indicated that, procedurally, it could be done. "The order of the district court is not contrary to the liberal use of the amendment process in federal practice. Nor is our decision in this case a restriction or limitation on the *amendment procedure as it pertains to adding parties plaintiff* or curing a defect in the cause of action." *Id.* at 1282 (emphasis added). This language presumes that Rule 15 is an appropriate mechanism for adding a plaintiff when the original plaintiff *is* a proper party with a valid cause of action. Additionally, the dissent points out that "it is settled law [in the Sixth Circuit] that an amendment can add parties to a lawsuit." *Id.* at 1286 (Wisdom, J. dissenting) (citing *McLellan v. Mississippi Power & Light Co.*, 526 F.2d 870, 872-73, (6th Cir. 1976) *modified on other grounds*, 545 F.2d 919 (*en banc*) (1977)). While *McLellan* involved the addition of defendants rather than plaintiffs, there is no meaningful distinction in the two situations. *See id.* at n.4 (citing 3 *Moore's Federal Practice* P 15.07(2) at 15-54, P 15.07(3), P 15.08(5) (2 ed. 1980); 6 *C. Wright & A. Miller, Federal Practice and Procedure* §1479, at 400-402 (1971)).

"Under the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Rule 15 directs the court to allow amendments liberally, expressing a strong preference for deciding

---

[12] This argument becomes moot in light of the court's denial of the state defendants' motion to dismiss for lack of subject matter jurisdiction.

- 15 -

a case on its merits.  There being no reason to depart from these general goals, the court will allow the plaintiffs to amend their complaint to add Cherry Hill as a new plaintiff.

### III. Motion for Leave to File a Document Received by the Defendants

The state defendants have requested leave to file a document received by them from the plaintiffs.  In its response, Huber posed no objection.  Therefore, the court will grant the state defendants' motion and the document will be so entered.  The court notes, however, that the Indiana ATC has been enjoined from enforcing the proposed ban mentioned in the letter. *See S.L. Thomas Family Winery, Inc., et al. v. Heath, et al.,* Cause No. 49D060511PL045032 (Superior Court of Marion County, Indiana, Nov. 23, 2005).

### IV. Motion to Intervene

Pursuant to Federal Rule of Civil Procedure 24(a), the KBWA has filed a motion to intervene in this case. Rule 24(a) directs the court to permit intervention when the applicant claims an interest relating to the action and is so situated that disposition of the action may impede or impair the applicant's ability to protect that interest.  However, Rule 24(a) also contains the following caveat: "unless the applicant's interest is adequately represented by existing parties."  The plaintiffs challenge four statutes, three of which only apply to wine sales.  Therefore, the KBWA only claims an interest relating to the constitutional challenge of KRS §244.165, which applies to "any person in the business of selling *alcoholic beverages*" (emphasis added).  The plaintiffs deny that the KBWA has any interest because they "have only attacked the constitutionality of the pertinent Kentucky statutes to the extent they grant privileges to Kentucky vintners which are denied to out-of-state vintners." *Plaintiffs' Response and Objection to KBWA's Motion to Intervene* (DN 34), p. 2. The court does not address this dispute because, even assuming *arguendo* that the KBWA has an interest which may be affected by the disposition of this case, that interest is adequately represented by the existing defendants.

The KBWA purports to have a "direct interest in provisions of Kentucky law that establish and work in conjunction with the three tier system for the purchase, sale and distribution of alcoholic

beverages in Kentucky." *KBWA's Memorandum in Support of Motion to Intervene* (DN 31), p. 3. This interest is indistinguishable from that of the existing defendants. The state defendants certainly have an interest in the integrity of the three-tiered system adopted by the state legislature. Governmental individuals are unique defendants. The courts grant them a presumption of adequate representation of all interested parties. *See, e.g.*, *Wade v. Goldschmidt*, 673 F.2d 182, 186 n. 7 (7th Cir. 1982). (Applicants must "overcome the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit (especially if it is the state) have the same ultimate objective."); *Environmental Defense Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979) ("The applicant for intervention must demonstrate that its interest is in fact different from that of the state and that that interest will not be represented by the state."); *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3rd Cir. 1976) ("It seems unlikely that anyone could be better situated to defend than the governmental department involved and its officers."). While the KBWA may have a more direct financial interest in the outcome of this suit, there is no "divergence between [its] position and the state's position on the primary issue." *Environmental Defense Fund*, 631 F.2d at 740.

Furthermore, one wholesaler is already a party to this action. The intervening defendant, Wine and Spirits Wholesaler, shares the KBWA's economic interest. Both entities represent the middle tier industry. Adding a second wholesaler would be superfluous, as there is no indication that these parties have distinct interests. Should a change in KRS §244.165 "degrade the validity of [the three tier] system for all alcoholic beverages," the existing defendants have equal incentive to defend this constitutional attack. *KBWA's Reply* (DN 40), p.3. In fact, the Wine and Spirits Wholesalers has a larger stake in this action since the plaintiffs challenge the statutory scheme for wine sales in particular. The generalized interest identified by the KBWA is adequately represented by the existing defendants; therefore, the court will deny its motion to intervene. While the KBWA has no right to intervene under Rule 24(a), it may certainly file an amicus brief.

### V. Motion for Judgment on the Pleadings

Both parties have requested that the court hear oral argument before ruling on the plaintiffs' motion for judgment on the pleadings. The court agrees that it would be beneficial for the parties to better elucidate their positions, especially in light of the complexities and novel posture of this case. Therefore, the court will schedule an oral argument with respect to said motion.

A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record