UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HUBER WINERY, et al                                                    PLAINTIFFS

v.                                                    CIVIL ACTION NO. 3:05CV-289-S

LAJUANA S. WILCHER, et al                                              DEFENDANTS

and

WINE AND SPIRITS WHOLESALERS OF
KENTUCKY, INC.                                        INTERVENING DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion for judgment on the pleadings by the plaintiffs.

This case involves the plaintiffs' challenge to certain provisions of Kentucky law, which allegedly

discriminate against interstate commerce by prohibiting out-of-state wineries from selling and

shipping wine directly to consumers and retailers while allowing in-state wineries to do so on a

limited basis.

### FACTS

In July of 2005, the plaintiffs filed this motion for judgment on the pleadings, which was

followed by a flurry of motions including a motion to dismiss made by the state defendants.  The

court ruled on five then-pending motions, but reserved its ruling on the motion for judgment on the

pleadings, granting the parties' mutual request for oral argument on that motion.  The court

conducted a status conference prior to the scheduling of oral argument.[1]  The parties informed the court that the Kentucky General Assembly was in the process of amending the challenged statutory scheme and all parties agreed to hold the motion for judgment on the pleadings until the passage of the new legislation.

Once the new legislation was adopted, the parties advised the court that some of the challenged provisions had been changed and that the new law[2] would take effect on January 1, 2007.  The parties conferred regarding a possible interim order but were unable to reach an agreement.  The plaintiffs have now asked the court to consider their original motion for judgment on the pleadings, which argues that the current law is unconstitutional.  The court allowed all parties to supplement their briefs on the issues of (1) whether the court should rule on the constitutionality of the current law, which remains in force until January 1, 2007 and (2) if the court finds the current law infirm, what remedy would be appropriate until the new law supercedes it.

<u>STANDARD OF REVIEW</u>

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 479 F.2d 478, 480 (6th Cir.1973) (citation omitted).  "The motion is granted when no material issue of fact exists and the party making the motion is

---

[1] In light of the many developments that have occurred since the court's February 7th, 2005 Order (DN 58), the court will not hold oral argument on the instant motion.  The parties have thoroughly briefed the relevant facts and law so that the court is equipped to rule on the motion without further argument from counsel.  Therefore, the state defendants' most recent request for oral argument is denied.

[2] We will refer to the new law as "SB 82."

entitled to judgment as a matter of law." *U.S. v. Moriarty*, 8 F.3d 329, 332 (6th Cir.1993) (citations omitted).

I.

LaJuana S. Wilcher, Lavoyed Hudgins (hereinafter "state defendants") and the Wine and Spirits Wholesalers of Kentucky, Inc. (hereinafter "Wine Wholesalers") contend that the constitutionality of the current law is moot. Both parties cite *Kentucky Right to Life v. Terry*, 108 F.3d 637 (6th Cir. 1997) to support this proposition. In *Terry*, the plaintiff challenged the constitutionality of various sections of the Kentucky Campaign Finance Law. While the case was pending, the General Assembly amended those provisions, effectively mooting the plaintiff's challenge. The instant case is distinguishable, however, because the General Assembly delayed the effective date of SB 82, whereas the amendments to Kentucky's campaign financing laws were immediately effective. Because the current laws continue to be in force, the plaintiffs challenge remains a live controversy. We must consider whether the current statutory scheme violates the commerce clause; and if it does, we must determine the appropriate remedy.

II.

The Supreme Court recently struck down Michigan and New York laws regulating the sale and shipment of wine. *See Granholm v. Heald*, 544 U.S. 460, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005). In essence, the lesson from *Granholm* is that statutory schemes which prohibit or limit shipment of wine by out-of-state producers while simultaneously authorizing shipment by in-state producers violate the Commerce Clause. *Id.* at 493. Absent a showing that such discrimination is necessary to serve a legitimate state interest and that there is not another less burdensome alternative

to achieving that goal, regulations that "disadvantage out-of-state wine producers" cannot stand. *See id.*

In light of *Granholm*, the plaintiffs have challenged four Kentucky statutes, arguing that they violate the Commerce Clause by granting preferential access to in-state wineries. The first statute, KRS 244.165, criminalizes the shipment of alcohol by out-of-state sellers to any Kentucky resident who does not hold a valid wholesaler or distributor retailer license. This statute effectively brings out-of-state sellers into Kentucky's three-tiered system. The second challenged statute is KRS 243.032, which provides that a restaurant making 50% or more of its sales as food may obtain a license to serve wine by the glass for consumption on the premises, but requires the licensee to purchase wine only from wholesalers. The final two challenged statutes are KRS 243.155 and 243.156, which authorize certain activities for small winery licensees and farm winery licensees, respectively.

*A. The farm and small winery exceptions to the three-tier system expressly favor in-state economic interests in violation of* Granholm.

Properly licensed small and farm wineries are permitted to ship up to two cases of wine to a consumer who purchases the wine in-person at the winery. KRS 243.155(1)(f); 243.156(1)(h). Small and farm winery licensees may also sell their wine directly to retailers at wholesale price if the wine has been offered to wholesalers. KRS 243.155(1)(d); 243.156(1)(d). By creating these small and farm winery licenses, the General Assembly has carved out an exception to the three-tiered system, allowing those licensees to bypass the system in limited situations.

Farm wineries, by definition, must be located in Kentucky.[3]  Similarly, small wineries, by definition, must make their wine from grapes, fruit or honey grown in Kentucky.[4]  These definitions effectively preclude out-of-state wineries from eligibility.  Thus, while farm and small wineries may ship to consumers in limited circumstances, the out-of-state wineries producing 25,000 or 50,000 gallons or less annually are subject to criminal prosecution for the same behavior.  Similarly, small and farm wineries are privileged to sell wine directly to retailers in limited circumstances, but their out-of-state counterparts are subject to criminal prosecution for the same behavior. This disparate treatment violates *Granholm*.

The state defendants and the Wine Wholesalers argue that invalidating the challenged laws would strike a serious blow to the three-tier system.  A similar argument was rejected by the *Granholm* Court, which acknowledged that the "three-tier system itself is unquestionably legitimate," but also recognized that "[s]tate polices are protected under the Twenty-first Amendment [only] when they treat liquor produced from out of state the same as its domestic equivalent."  *Granholm,* 544 U.S. at 489 (internal quotations omitted). We note that the General Assembly created an exception to the three-tier system by allowing properly licensed small and farm wineries to bypass the system.  While the General Assembly may adopt exceptions to the general statutory scheme, those exceptions must apply evenhandedly.  The current statutory scheme does not; on the contrary, it expressly favors in-state wineries.  Accordingly, it is infirm under *Granholm*.

---

[3]KRS 241.010(22) defines a farm winery as "a winery located on a Kentucky farm with a producing vineyard, orchard, or similar growing area, manufacturing and bottling wines in an amount not to exceed twenty-five thousand (25,000) gallons per year."

[4]KRS 241.010(45) defines a small winery as "a winery producing wines from grapes, other fruit, or honey produced in Kentucky, . . ., in an amount not to exceed fifty thousand (50,000) gallons in one (1) year."

*B. The in-state eligibility requirements contained in the small and farm winery exceptions do not survive strict scrutiny.*

State laws that discriminate against interstate commerce face "a virtually *per se* rule of invalidity." *Granholm*, 544 U.S. at 476 (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978)). Our determination that the current laws discriminate against interstate commerce, however, does not end the inquiry. The *Granholm* court recognized that a discriminatory law is not unconstitutional if it "advances a legitimate local purpose that cannot be served by reasonable non-discriminatory purposes." *Id.* at 489 (quoting *New Energy Co. v. Limbaugh*, 486 U.S. 269, 278 (1988). The state defendants identify "temperance" as the legitimate local purpose, arguing that the current statutory scheme promotes this "core value" of the Twenty-First Amendment. It is undoubtedly true that the Twenty-First Amendment allows the states to "address the moral concerns that underlay Prohibition, freeing them to impose temperance in the consumption of alcoholic beverages." *Beskind v. Easley*, 325 F.3d 506, 513 (4th Cir. 2003). There is also no doubt that the General Assembly may "uph[o]ld the desire of local counties to participate in local option elections." State Defendant's [First] Supplemental Brief (DN 83), p. 2.

The state defendants, however, have failed to demonstrate that restricting small and farm winery licenses to in-state wineries serves the "core value" of temperance or preserves the integrity of the dry counties or precincts in Kentucky. They merely argue that "temperance is the legitimate local purpose that cannot be served by allowing shipment of wine into dry territories." State Defendant's [First] Supplemental Brief (DN 83), p. 3. Allowing in-state wineries to ship directly to consumers in certain circumstances while prohibiting out-of-state wineries from doing the same has no differential effect on the shipment of wine into dry territories because the challenged statutory

scheme discriminates based upon where the wine originates, not upon where it ends up.  The in-state eligibility requirements are not narrowly tailored towards achieving temperance in dry territories.

*C. Extending the small and farm winery exception to out-of-state wineries of the same size is the appropriate remedy*.

As the current laws do not survive strict scrutiny, we turn to the issue of the appropriate remedy.  We are faced with the choice between "extension" and "nullification;" that is, we might extend the small and farm winery exception to out-of-state wineries or remove the exception altogether. All parties agree that "ordinarily extension rather than nullification, is the proper course." *Heckler v. Matthews*, 465 U.S. 728, 738, fn 5, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984).

The Wine Wholesalers as well as the Kentucky Beer Wholesalers Association,[5] however, urge the court to remove the small and farm winery privileges entirely.  They note that the Supreme Court has recognized that nullification may be appropriate in certain circumstances: The "court should not use its remedial powers to circumvent the intent of the legislature, and should therefore measure the intensity of commitment to the residual policy and consider the degree of potential disruption of the statutory scheme that would occur by extension as opposed to abrogation." *Id.*  The wholesalers suggest that the situation at bar presents just such a case in which nullification is necessary to preserve the intent of the legislature in creating a three-tier distribution system.  They argue that extending the privileges at issue here would strike a fatal blow to the three-tier system. We disagree and find that this situation does not warrant invoking the exception to the general preference for choosing extension over nullification.

---

[5]This party has filed an *amicus* brief.

While Kentucky has a well-established three-tier system in place, the General Assembly has clearly expressed its intent to allow wineries of a certain size to bypass that system. We are not to evaluate the wisdom of such policy decisions; but, under the mandate of *Granholm*, we must ensure that such exceptions apply evenhandedly. Therefore, we will enjoin only the unconstitutional applications of the small and farm winery statutes in order to preserve as much of the legislative intent as possible. *See e.g.*, *Ayotte v. Planned Parenthood of Northern New England*, __ U.S. __, 126 S.Ct. 961, 967-68, 163 L.Ed.2d 812 (2006) (quoting *Regan v. Time, Inc*., 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984)) ("[W]e try not to nullify more of a legislature's work than is necessary, for we know that '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'").

Striking the offensive provisions of the small and farm winery statutes will not destroy the three-tier system, as argued by the wholesalers. Farm and small wineries licenses will only be available to those wineries producing less than 25,000 and 50,000 gallons, respectively. All other wineries and alcohol producers will continue operating under the current, unaltered regulations. We need not strike KRS 244.165, but rather will simply enjoin the state defendants from enforcing it against properly licensed out-of-state farm and small wineries. Accordingly, we will strike the in-state eligibility requirements found in KRS 241.010(22), (45), 243.155(2) and 243.156(1)(a),(c), (3).

### *D. The in-person purchasing requirement discriminates, in practical effect, against interstate commerce.*

The plaintiffs challenge an additional portion of the remaining statutes; namely the in-person requirement found in KRS 243.155(1)(f)(1) and 243.156(1)(h)(1). While all parties agree that the in-person purchasing requirement is not discriminatory on its face, the plaintiffs argue that it, "in

practical effect[,] discriminates against out-of-state interests." *See Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005). Specifically, the plaintiffs argue that the in-person sale requirement presents "an economic barrier which clearly benefits in-state wineries while burdening out-of-state wineries by making it financially unfeasible to effect direct sales to Kentucky residents." Plaintiff's Supplemental Brief Regarding the In-Person Requirement (DN 92), p. 4. The plaintiffs assert that out-of-state wineries will have to incur a substantial cost in order to meaningfully penetrate the Kentucky market. They suggest that out-of-state wineries will have to establish a physical presence in Kentucky or simply wait and hope that Kentucky consumers visit their locations while traveling. They also maintain that the in-person requirement deprives Kentucky residents of "meaningful access to out-of-state wineries." *Id.* at 5, fn 4.[6]

The state defendants, on the other hand, argue that the in-person requirement has nothing more than an "incidental effect" on interstate commerce. State Defendants' Second Supplemental Brief (DN 94), p. 3. To support this assertion, they point out that Kentucky is bordered by seven other states and that "wineries located in these States are often closer to Kentucky citizens than some distant wineries in Kentucky." *Id.* The examples provided by the state defendants, while interesting, fail to examine interstate economic interests as a whole.[7] We agree with the plaintiffs' critique of this argument - that it "fails to consider several important points, [namely], that wineries exist in

---

[6]The plaintiffs analogize this situation to one considered by the *Granholm* Court where the New York statutes required out-of-state wineries to establish a physical presence in New York in order to have the privilege of making direct sale and shipment to consumers. The Supreme Court struck down those laws, noting that "[f]or most wineries, the expense of establishing a bricks-and -mortar distribution operation in 1 State, let alone all 50, is prohibitive." *Granholm,* 544 U.S. at 475.

[7]In fact, elsewhere in their brief, the state defendants point out the Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive acts or burdensome regulations." State defendants' Second Supplemental Brief (DN 94), p. 4 (quoting *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200 (2nd Cir. 2003). It follows that, in order to determine whether the in-person requirement discriminates against interstate commerce, we must examine the effect beyond Kentucky and its neighboring states.

states other than those neighboring Kentucky, that each winery's products are distinctive, and that many of the highly desirable wines come not from Tennessee and Indiana, but from California, Oregon and Washington." Plaintiff's Response to Defendants' Supplemental Brief (DN 95), p. 5. The plaintiffs have shown that Kentucky and its seven bordering states account for a mere 0.6% of the nation's total wine production. *Id.* at 6. Thus, the state defendants examples fail to take into account the impact on "commerce between Kentucky and those states accounting for more than 99% of the nation's annual wine production, including 8 of the top 10 producing states." *Id.* at 7. We note that wine is a unique product. Accordingly, we agree with the plaintiffs that "it is false to presume that a wine consumer would purchase from the closest winery all things being equal." *Id.* Thus, the state defendants' argument is flawed. We are convinced that the effect on interstate commerce is not *de minimus*.

In the *Brown & Williamson* case quoted in footnote 5 above, the Second Circuit Court of Appeals upheld a law that "eliminate[d] all sales of cigarettes to New York consumers that do not involve face-to-face sales or the transportation of fewer than four cartons of cigarettes to any one consumer." *Brown & Williamson*, 320 F.3d at 213. Prohibiting "one manner in which cigarettes could otherwise be sold to New York consumers," according to the opinion, did not offend interstate commerce. *See id.* The *Brown & Williamson* court based its decision, *inter alia*, on the fact that the law did "not restrain the flow of goods into New York." *Id.* at 214. In the situation at bar, however, the in-person purchasing requirement does restrain the flow of wines into Kentucky because, as stated above, nearly all wine is produced outside of Kentucky and its neighboring states. Furthermore, there is an important difference between cigarettes and wines. While "no two wines

are created equal,"[8] cigarettes are fungible.  Thus, New York consumers' access to the cigarette market was not affected in the manner in which Kentucky consumers' access to the wine market is.

It is clear that the in-person requirement amounts to "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994).  "The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States." *Granholm,* 544 at 472 (citing *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539, 69 S.Ct. 657, 93 L.Ed. 865 (1949)).   Accordingly, we evaluate the in-person requirement using strict scrutiny in order to determine whether the laws  "advance a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  *Id.* at 489 (quoting *New Energy Co. Of Ind. v. Limbach*, 486 U.S. 269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988)).

### E. The in-person purchasing requirement does not survive strict scrutiny.

The state defendants provide three purported legitimate reasons for the challenged laws, all of which are said to be "core values" of the Twenty-First Amendment.  First, the defendants argue that the in-person requirement promotes temperance, indicating that the three-tier system was designed  to prevent "an excess of alcohol consumption."  State Defendants' Reply to Second Supplemental (DN 96), p. 8.  As already discussed, we  leave the three-tier system undisturbed in any meaningful way.  Striking the in-person requirement merely ensures that the legislatively created exception granted to small and farm wineries applies evenhandedly to both in-state and out-of-state producers.  The state defendants argue that the in-person requirement promotes temperance

---

[8] Plaintiff's Response to Defendants' Supplemental Brief (DN 95), p. 7.

in another way, namely by preserving the local option laws currently in place in several territories in Kentucky.  Allowing Kentucky residents living in dry territories to order wine via internet, phone or mail order, according to the defendants, would "obviate" the prohibitions under current local option laws.  State Defendants' Reply to Second Supplement Brief (DN 96), p.8.  We disagree.

The farm and small winery licenses, as amended by this court, may co-exist with local option laws.  Nothing in the farm or small winery licenses provide such licensees with a wholesale exemption to violate the local county ordinances.  The in-person purchasing requirement simply does not, and cannot, ensure that dry territories remain alcohol-free.  Even if the requirement did further the goal of preserving the integrity of the dry territories, it is not the least burdensome way of doing so.  For instance, we accept the plaintiffs' suggestion that "a less burdensome means of ensuring the continued integrity of dry territories would be for the State Defendants, as part of the process of licensing farm wineries and small wineries, to specifically identify the counties, cities and/or zip codes in Kentucky to which shipments cannot be made."  Plaintiff's Supplemental Brief (DN 92), p. 9, fn 6.

Second, the state defendants maintain that the in-person requirement increases the risk of underage drinking.  A similar argument was rejected in *Granholm* where the Supreme Court dismissed the concern that internet purchasing by minors would pose a serious problem.  The *Granholm* Court found that minors are less likely to purchase wine than beer or liquor, that they have a more direct means of obtaining the alcohol and that they are unlikely to have wine shipped because they "want instant gratification."  *Granholm*, 544 U.S. at 490 (citations omitted).  Despite that conclusion, the Court assumed *arguendo* that direct shipping of wine would increase the risk of underage drinking, but found, nonetheless, that there were less burdensome alternatives to

protecting that interest.  For instance, the states could require "an adult signature on delivery and a label so instructing on each package."  *Id.* at 490. *Granholm* compels the same conclusion at bar: the in-person requirement is not narrowly tailored to achieving the goal of keeping wine out of the hands of minors.

Lastly, the state defendants argue that the in-person sales requirement is motivated tax by concerns for tax revenue and that removing that requirement may result in a "potential loss of revenue in excise taxes."  State Defendants' Reply to Plaintiff's Second Supplemental Brief (DN 96), p. 9.  The Wine Wholesalers echo this argument, predicting a heavy loss in sales and use tax if internet wine sales are permitted.  Intervening Defendant's Reply to Plaintiff's Second Supplemental Brief (DN 97), p. 8.  The Wine Wholesalers' argument, however, seems to assume that internet sales would be permitted with no restrictions.  Such is not the case.  Only properly licensed small and farm wineries would be permitted to ship directly to consumers.  The rest of the three-tier system remains fully intact.

Furthermore, *Granholm* rejected a similar tax argument, concluding that the defendants had "not shown that tax evasion from out-of-state wineries pose[d] such a unique threat that it justife[d] their discriminatory regimes."  *Granholm*, 544 U.S. at 492.  Even assuming that the defendants had adequately demonstrated a legitimate concern regarding the loss in tax revenue, "their regulatory objectives can be achieved without discriminating against interstate commerce."  *See id.*  For instance, the state defendants could require licensees to "submit regular sales reports and to remit taxes."  *See id.*

As we find that the in-person requirement is not narrowly tailored to achieving the goals identified by the state defendants, we must strike KRS 243.155(1)(f)(1) and 243.156(1)(h)(1).

- 13 -

*F. The Restaurant Wine Licensing Statute*

The plaintiffs also challenge KRS 243.032, which provides that restaurants in Kentucky that are licensed to serve wine on the premises "shall purchase wine only from licensed wholesalers." The plaintiffs note that this "prohibits such restaurants from buying wine directly from out-of-state wineries." Proposed Order Tendered with Plaintiffs' Original Motion for Judgment on the Pleadings (DN 12). In fact, it prohibits such restaurants from buying from anyone other than licensed wholesalers. There is no apparent distinction between in-state or out-of-state wineries. Plaintiffs have also noted that KRS 243.155(1)(d) and 243.156(1)(d) allow farm and small wineries to sell directly to retailers (at wholesale price) if the wine has been offered to wholesalers first.

While the argument is not clear from the briefs, to the extent that the plaintiffs suggest KRS 243.155(1)(d) and 243.156(1)(d) may be inconsistent with KRS 243.032, that issue is not before this court. We are evaluating the challenged statutes to ensure that they apply evenhandedly to in-state and out-of-state wineries. KRS 243.032, 243.155(1)(d) and 243.156(1)(d) (as amended by this opinion and order) do not expressly favor in-state wineries at the expense of out-of-state wineries and the plaintiffs have failed to demonstrate any practical effect discrimination with regard to these statutes. Accordingly, we decline to disturb those portions of this statutory scheme.

For the reasons set forth above, the court will grant the plaintiffs' motion for judgment on the pleadings in part and deny it in part. A separate order will be entered herein this date in accordance with this opinion.

Dated:



cc:     Counsel of Record

- 14 -