UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CHERRY HILL VINEYARDS, LLC, et al.                          PLAINTIFFS

v.                                                CIVIL ACTION NO. 3:05CV-289-S

V. LAVOYED HUDGINS, in his Official Capacity as
Executive Director of the Kentucky Office of Alcoholic
Beverage Control                                            DEFENDANT

and

WINE AND SPIRITS WHOLESALERS OF
KENTUCKY, INC.                                  INTERVENING DEFENDANT

## <u>MEMORANDUM OPINION</u>

This matter is before the court on cross-motions of the parties for summary judgment. The plaintiffs, Cherry Hill Vineyards, LLC, William G. Schneider, Jr. and John D. Reilly, Jr.,[1] successfully challenged the constitutionality of certain provisions of Kentucky's laws regulating small and farm wineries.[2] This court ruled, in accordance with the United States Supreme Court decision in *Granholm v. Heald*, 544 U.S. 460, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005), that various provisions of KRS Chapters 241 through 244 discriminated against interstate commerce by prohibiting small out-of-state wineries from selling and shipping wine to Kentucky consumers and retailers on the same basis as permitted for in-state wineries. In August, 2006, the court struck the unconstitutional provisions and enjoined enforcement of KRS 244.165 against all properly licensed out-of-state small or farm wineries.

---

[1]Huber Winery dismissed its claims by agreed stipulation of dismissal entered into with the defendants.

[2]The current statutes draw a distinction between small and farm wineries in Kentucky. One of the revisions made in the new statutory scheme which goes into effect January 1, 2007 is the elimination of this distinction. The new statutes address the "small farm winery," defined as a winery producing wines in an amount not to exceed fifty thousand (50,000) gallons in a calendar year. KRS 421.010(44).

The court entered judgment despite the passage of new legislation amending the statutory scheme.  The court did so in light of the fact that this new scheme would not become effective to alter the unconstitutional provisions until January 1, 2007.[3]

The plaintiffs were permitted to amend their complaint to add challenges to the constitutionality of the amended statutory scheme.[4]  The parties engaged in limited discovery and filed motions for summary judgment on an expedited schedule in order to give the court sufficient time to consider the matter prior to the effective date of the legislation.  The plaintiffs seek judgment declaring SB 82 unconstitutional.  The defendants, V. Lavoyed Hudgins, in his official capacity as the Executive Director of the Kentucky Office of Alcoholic Beverage Control ("the State") and the Wine and Spirits Wholesalers of Kentucky, Inc. (collectively, "defendants"), urge the court to conclude that the enactment remedies the ills of the former statutory scheme and permissibly regulates the sale and shipment of wine in the Commonwealth.  Additionally, the defendants challenge on a number of bases the plaintiffs' standing to pursue their claims with respect to SB 82.[5]

In *Granholm*, *supra*., the Supreme Court struck down Michigan and New York laws regulating the sale and shipment of wine.  *Granholm* taught that the statutory schemes which "mandate 'differential treatment of in-state and out-of-state economic interests that benefit[] the former and burden[] the latter'" violate the Commerce Clause.  *Granholm*, 544 U.S. at 472.  When a statute has "only indirect effects on interstate commerce and regulates evenhandedly" the Supreme Court has "examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits."  *Brown-Forman Distillers Corp. v. N.Y. State Liquor*

---

[3]The parties conferred regarding a possible interim order pending the lapse of the old law, but were unable to reach an agreement.  After the court's ruling, the defendants appealed.  The United States Court of Appeals for the Sixth Circuit held the appeal in abeyance pending resolution of the issues addressed to the new version of the legislation.

[4]We will refer to the new law as "SB 82."

[5]For purposes of this opinion, the court will refer to the defendants and their various arguments collectively.  The motions and responses raise legal arguments not particularized to facts pertaining to any given defendant.

*Authority*, 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986), *citing, Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). The Supreme Court noted in *Brown-Forman* that "there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the *Pike v. Bruce Church* approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity." *Brown-Forman*, 476 U.S. at 579.

In *Granholm, supra*., the Supreme Court noted that it had "previously recognized that the three-tier system [for alcoholic beverage distribution] itself is 'unquestionably legitimate.' [citation omitted]." The Court stated that state policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent. "The Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of alcoholic beverages and how to structure the liquor distribution system," noting that a state could bar importation of alcohol by banning its sale and consumption, or could assume direct control of alcoholic beverage distribution through state-run outlets or funneling sales through the three-tier system. *Granholm,* 544 U.S. at 488-89, *quoting, California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110, 100 S.Ct. 937, 946, 63 L.Ed.2d 233 (1980). However, the Court reiterated that the central purpose of the Twenty-first Amendment "was not to empower States to favor local liquor industries by erecting barriers to competition." *Granholm*, 544 U.S. at 487, 489, *quoting, Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). In sum, as stated in *Bacchus*, 468 U.S. at 275,

> ...[b]oth the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution [and] each must be considered in light of the other and in the context of the issues and interests at stake in any concrete case." *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, [377 U.S. 324], at 332, [84 S.Ct.] at 1298.

<u>SB 82</u>

SB 82 amended the statutory scheme relating to Kentucky wineries in a number of significant respects.  We need not restate the provisions of the current law in order to discuss SB 82's revisions.  Rather, we will describe the new scheme as it is slated to come into existence on January 1, 2007.

KRS 243.155(1) provides that any in-state or out-of-state small farm winery may apply for a small farm winery license.  A "small farm winery" is defined as a winery producing wines in an amount not to exceed fifty thousand (50,000) gallons in a calendar year.  KRS 241.010(44).  Among other privileges granted to a small farm winery licensee, it may ship to a customer wine produced by a small farm winery if (1) the wine is purchased by the customer in person at the small farm winery, (2) the wine is shipped by licensed common carrier, and (3) the amount of wine shipped is limited to no more than two (2) cases per customer per visit.  KRS 243.155(2)(g).

KRS 244.165 which criminalizes the shipment of alcohol by out-of-state sellers to any Kentucky resident who does not hold a valid wholesaler or distributor license now exempts small farm wineries located in other states from its prohibition upon certain conditions.  Out-of-state small farm wineries are permitted to ship wine to customers in Kentucky if the wine is purchased by the customer in person at the winery, it is shipped by licensed common carrier, and the amount of wine shipped is limited to no more than two (2) cases per customer per visit.  KRS 244.165(2).  Thus the explicit exemption under KRS 244.165, mirroring the requirements of the licensing provision, makes clear that the shipping privilege granted to licensed small farm wineries applies to out-of-state as well as in-state small farm wineries.

A new small farm winery wholesaler's license is created, at a cost to the applicant of $100.00 per annum.  KRS 243.030(43).  KRS 243.110 provides that, with certain exceptions not applicable to small farm wineries, each kind of license listed in KRS 243.030 is incompatible with every other kind so listed, and that no person or entity holding one kind may apply for or hold a license of another kind under that section.  KRS 243.030(4) further provides that a person or entity cannot

- 4 -

evade the prohibition against holding two kinds of licenses by applying for a second license through or under the name of a different person or entity.  Application for a license will be denied if the applicant is substantially interested in a person or entity that holds an incompatible license.  As the small farm winery license and small farm winery wholesalers license are both contained in KRS 243.030, licensed small farm wineries cannot also be licensed as small farm winery wholesalers. A small farm winery wholesaler's license permits the licensee to purchase, receive, store or possess wine produced by small farm winery licensees.

SB 82 also creates a Kentucky small farm wineries support fund.  KRS 260.175. $400,000 per year will to be placed in the fund and allocated for designated purposes. $200,000 is earmarked for the promotion, advertising, and marketing in Kentucky of wine produced by small farm wineries located in Kentucky.  $100,000 is for the establishment of a local marketing cost-share program to provide Kentucky small farm wineries with access to matching funds reimbursements for projects that promote and market their products. $75,000 is designated for the payment of fees to licensed wholesalers who apply to the Kentucky Grape and Wine Council to participate in its wine distribution program.  A licensed wholesaler may apply and be considered for the program whereby the wholesaler agrees to distribute wines produced by small farm wineries licensed under KRS 243.155 and to sell them to retailers for the same price paid by the wholesaler. $25,000 is also allocated for administrative costs of the Kentucky Grape and Wine Council.

I.  Standing and Ripeness

This court addressed issues of standing and ripeness as applied to the current statutory scheme.  (DNs 57, 58).  The defendants have raised these matters again with respect to SB 82. Under the same legal framework as applied in the February 6, 2006 opinion, the court concludes that the plaintiffs have standing to pursue the claims asserted in the Second Amended Complaint.

In the case of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court established a three-prong test to determine standing, one of the procedural prerequisites for subject matter jurisdiction. To prove that a plaintiff has standing, he must demonstrate that: (1) he suffered an injury in fact which is (a) concrete and particularized and (b) actual or imminent; (2) there was a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision. *See id*. at 560-61. The party invoking federal jurisdiction bears the burden of establishing standing. *Id*. at 561.

The defendants contend that there is no actual or present harm or a significant possibility of future harm requiring pre-enforcement review, citing, *Goleta National Bank v. O'Donnell*, 239 F.Supp.2d 745, 752 (S.D.Ohio 2002)(*quoting, National Rifle Association of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)).

This court previously found that the plaintiffs had suffered an injury in fact, specifically, "a denial of their right to engage in interstate commerce because of the threatened enforcement of [the relevant statutory provisions] against them and because of the threatened enforcement of [the relevant statutory provisions] against their would-be vendors." *See Dickerson v. Bailey*, 87 F.Supp.2d 691, 702 (S.D.Tex. 2000). The plaintiff wineries suffered a "concrete commercial injury" in that they were forbidden from shipping wines to Kentucky buyers, thus denying them those potential profits. *Magaw*, 132 F.3d at 287 ("[W]e believe a citizen should be allowed to prefer 'official adjudication to public disobedience,'" *quoting,* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3532.5 at 183-84 (2d ed. 1984)). "'An economic injury which is traceable to the challenged action' satisfies the requirements of Article III standing." *Id.* (*quoting, Linton by Arnold v. Commissioner of Health and Environment, State of Tennessee*, 973 F.2d 1311, 1316 (6th Cir. 1992)).

The court concludes again that the plaintiffs satisfy the elements of standing.  Both Cherry Hill and the individual plaintiffs suffered injury in fact under the current regime.[6]  The court redressed this injury in temporary fashion by its order and judgment of August, 2006. (DNs 103, 104).  As noted earlier, the parties were unable to reach an agreement with regard to an interim order of non-enforcement pending the expiration of the current statutes.  While the defendants urged that there was no threatened enforcement, the plaintiffs were placed in the untenable position of proceeding under the old law essentially at their own risk.

The situation faced by the plaintiffs presently is no different from the standpoint of threatened prosecution and commercial injury.  The defendants note that SB 82 is not yet in force.  Cherry Hill has not applied for a small farm winery license in Kentucky, nor has it been prosecuted for shipping wine into Kentucky.[7]  Further, they note that the individual plaintiffs are unfamiliar with Cherry Hill wines and have expressed no present intention to make purchases from Cherry Hill.  As stated in *Magaw*, 132 F.3d at 287,

> Although we are aware of the Supreme Court's admonition "not to entertain constitutional questions in advance of the strictest necessity," *Poe v. Ullman*, 367 U.S. 497, 503, 81 S.Ct. 1752, 1756, 6 L.Ed.2d 989 (1961), we believe that as a policy matter, strong reasons counsel against requiring the manufacturers and dealers to engage in illegal conduct before their challenges can be heard.  There are no advantages to the court to be gained from withholding judicial review at the present time and waiting until a manufacturer or dealer has been prosecuted under the Act.  A defense in criminal proceedings on constitutional grounds does not provide an adequate remedy for the economic injury incurred.

---

[6]The arguments with respect to standing were previously addressed to Huber Winery and the individual plaintiffs.  In the February ruling, the court granted leave  to amend the complaint to add Cherry Hill as a plaintiff.  Injury in fact existed with respect to Cherry Hill inasmuch as it was in a similar position to Huber Winery, facing threatened enforcement and a concrete commercial injury due to the infirmities in the statutes.

[7]The defendants state in their brief that they "argued previously that Cherry Hill and Huber Winery lacked standing to bring the present lawsuit and incorporates herein by reference those arguments made as to Constitutional standing."  State Defendants' Motion for Summary Judgment, p. 7.  The court therefore incorporates its previous ruling on standing and ripeness matters (DNs 57, 58) as if fully set forth herein.  Rather than reiterate prior arguments, the court's prior ruling should be considered in complement to this opinion.

SB 82 purportedly seeks to remedy the constitutional infirmities in the old law.  The amended provisions permit an out-of-state winery to apply for a Kentucky small farm winery license, and to ship wine to Kentucky customers under certain circumstances.  The in-state/out-of-state distinction which existed in the old law and which this court held unconstitutional has been removed by the Kentucky legislature.  The plaintiffs urge that certain provisions of this new statutory scheme still operate to discriminate against interstate commerce, however, by favoring in-state economic interests in practical effect.

A causal connection between the alleged injury and the challenged statutory scheme can be traced to KRS 244.165, the hook upon which potential prosecution hangs.  That section makes it unlawful "for any person in the business of selling alcoholic beverages in another state or country to ship or cause to be shipped any alcoholic beverage directly to any Kentucky resident who does not hold a valid wholesaler or distributor license issued by the Commonwealth of Kentucky."  The sole exception to that prohibition is for a small farm winery in another state when wine is purchased in person at that out-of-state winery.  The winery may then ship only two cases per customer per visit and it must be shipped by licensed common carrier.  The plaintiffs contend that the so-called "in-person requirement" and the quantity limitation effectively deny the out-of-state small farm wineries the ability to participate in the Kentucky market because the practical effect of these restrictions is to deny any meaningful access by the out-of-state wineries.  This causal connection is sufficient to satisfy the standing requirement. *Dickerson*, 87 F.Supp.2d at 701("coerced obedience to [the challenged] provision[s] prohibits Plaintiffs' enjoyment of their rights").

Finally, the plaintiffs urge that a decision favorable to them would redress their injury inasmuch as the removal of the barriers to direct shipping would place out-of-state and in-state small farm wineries on equal footing. *Dickerson*, 87 F.Supp.2d at 701.  The defendants do not contend that the remedy would not improve out-of-state small farm wineries' ability to penetrate the

Kentucky market.  Rather they urge that the remedy is not constitutionally required.  We find that a decision favorable to the plaintiffs would likely redress their alleged injury.

The defendants urge that prudential concerns militate against the court's consideration of the challenge to the in-person requirement to the extent that the wineries seek to assert claims of other wineries which are not open to the public and which have internet sales capabilities.  The defendants contend that since Cherry Hill is open to the public and does not conduct internet sales,[8] its claims violate the third-party standing rule which prohibits Cherry Hill from asserting the rights or legal interests of others not before the court.  *Id.* at n. 12.  The individual plaintiffs, however, may assert injury through denial of access to wines from wineries which are not open to the public and wineries which offer wines for sale by internet, as it would be impossible for the individual plaintiffs to obtain such wines unless they were sold through a Kentucky distributor.  "Cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a state ultimately discriminates, and customers of that class may also be injured...Consumers who suffer this sort of injury from regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III."  *Id.*

The plaintiffs have established standing to pursue their claims challenging various provisions of SB 82.  We also conclude that the related question of ripeness of the claims for adjudication must be answered in the affirmative.  Again, the legal framework upon which the court earlier ruled on the matter of ripeness applies equally here.  The context in which we decide the ripeness issue is somewhat different in light of the fact that SB 82 is not effective until January 1, 2007.  We find this difference to be of no moment, however.

The doctrine of ripeness counsels against determining matters which pose merely hypothetical or abstract issues.  The court must evaluate "both the fitness of the issues for judicial

---

[8]Cherry Hill disputes the assertion that it does not have internet sales capabilities.  However, that factual dispute need not be resolved as we conclude that the individual plaintiffs may properly raise the issue.

decision and the hardship to the parties of withholding court consideration" in determining whether to proceed. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

First, the plaintiff must have standing, and the issues presented must be purely legal ones. *See id.* The court has determined that the plaintiffs have standing. The determination herein, whether the challenged statutes violate the Commerce Clause, presents a purely legal inquiry.

As we determined previously, withholding consideration of the matter would produce a hardship sufficient to meet the second prong of the test. The plaintiffs must either comply with the requirements of SB 82 or risk prosecution. We find that under *Abbott, supra.* and *Magaw*, *infra*., such a circumstance imposes a sufficient hardship to the parties to warrant proceeding in this case. *See also, Thomas v. City of New York*, 143 F.3d 31, 35 (2d Cir. 1998)("pre-enforcement review warranted when a party would "in the absence of court review, be faced with a choice between risking likely criminal prosecution entailing serious consequences, or foregoing potentially lawful behavior"). SB 82 was passed by the Kentucky legislature. There is no question that it will come into effect on January 1, 2007. The effects of the *Granholm* decision have been felt across the nation as courts in many states grapple with the resulting legal challenges such as those posed in this suit. There would be no interest served by delaying consideration of the present motions until after the effective date of the new statutes. Both the regulators and the public have an interest in testing the constitutionality of the statutory scheme with which they must inevitably comply. The parties engaged in the discovery necessary to the development of the record in support of their legal contentions. Indeed, the court has been provided roughly 2,000 pages of memoranda and supporting documentation in this round of briefing. The issues are well developed and can be thoroughly addressed by the court on the present record. The court therefore concludes that it is appropriate and advisable to go forward in this matter.

## II. The Second Amended Complaint

The plaintiffs allege in two counts that SB 82 discriminates against out-of-state wineries with respect to sales to consumers and with respect to sales to licensed retail wine sellers. The defendants contend that certain arguments made by the plaintiffs in their summary judgment motion should not be considered as they were not specifically developed in the allegations of the Second Amended Complaint. Under Fed.R.Civ.P. 8(a)(2) providing for a short and plain statement of the claim showing that the pleader is entitled to relief, and 8(e)(1) requiring that each averment of a pleading be simple, concise and direct, we find room for more detailed and expansive argument of the constitutional challenges beyond what was originally alleged in the claims.

Rather than asserting wholly new claims, the plaintiffs offer  additional argument that the provisions of SB 82 unduly burden interstate commerce. Despite their contention that the plaintiffs should have sought amendment of the complaint to more fully articulate their claims, they have not asserted any unfair surprise. The defendants appear to have fully responded to these arguments[9] in their analysis of SB 82. The court will therefore consider all of the contentions raised and responded to by the parties.

## III.  Procedural Concerns

The parties challenge the admissibility of various documents submitted in support of their respective motions and responses. As aptly stated by the plaintiffs, "Both sides agree there are no material factual disputes. All the maneuvering, objecting, and filing of thousands of pages of exhibits are merely attempts by both sides to create an advantageous record for appeal." Plaintiffs' Combined Reply/Response to Wholesalers' Memorandum Concerning Summary Judgment, p. 30.

---

[9]...relating to the 2-case limit on shipments and the 50,000-gallon limit on small farm winery production...

- 11 -

The objections of the defendants to the affidavits and other materials submitted by the plaintiffs go to the weight rather than the admissibility of these items.  The plaintiffs' Exhibit E, the July 2003 Federal Trade Commission Staff Report entitled "Possible Anticompetitive Barriers to E-Commerce: Wine," is the most significant of the documents submitted by the plaintiffs for the court's consideration.  As the publication is a report of a United States government agency, it falls under the public records exception to the hearsay rule and is self-authenticating.  Fed.R.Evid. 803(8) and 902(5).  The principal criticism of the report, however, is that it is "deeply flawed," having drawn "questionable conclusions based on limited statistics with no sworn testimony."  Wholesalers' Memorandum of Law in Support of its Cross-Motion for Summary Judgment, p. 13.  The Wholesalers urge the court to disregard the report despite the reliance upon it by the Supreme Court in *Granholm*.  Again, this argument goes to the weight rather than to the admissibility of the evidence.

Similarly, the objections of the plaintiffs to the materials submitted by the defendants are matters of weight rather than admissibility.  Both sides present evidence in the form of affidavits, studies, scholarly articles and publications which offer opinions favorable to their respective schools of thought on the matter of the proper balance between the State's exercise of its power under the Twenty-first Amendment to address public health and safety concerns relating to the importation of alcoholic beverages and the checks on that power necessary to protect against impingement of rights under the Commerce Clause.  The parties agree on little, but they do not dispute that a significant body of scholarly thought and study exists supporting each position taken in this case.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the

- 12 -

substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 2510.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The court has reviewed at length the materials submitted in support of the present motions as well as the objects raised thereto.  The parties agree that no genuine issue of material fact exists to preclude judgment in this case.


### IV.  The *Granholm* Analysis

In the *Granholm* decision, the Supreme Court struck down Michigan and New York laws which discriminated against interstate commerce and which were not authorized by the Twenty-first Amendment.  *Granholm*, 544 U.S. at 493.  The Michigan law prohibited out-of-state wineries from directly shipping wine to customers, but allowed licensed in-state wineries to do so.  The New York law allowed direct customer sales by in-state wineries producing wine only from New York grapes, while out-of-state wineries were permitted to ship to customers only after establishing a physical presence within the state.  *Granholm*, 544 U.S. at 469-71.

The Supreme Court noted that at the time of its decision "[a]pproximately 26 states allow some direct shipment of wine, with various restrictions.  Thirteen of these States have reciprocity laws, which allow direct shipment from wineries outside the State, provided the State of origin

affords similar nondiscriminatory treatment. *Id.*[10] at 7-8. In many parts of the country, however, state laws that prohibit or severely restrict direct shipments deprive consumers of access to the direct market. According to the Federal Trade Commission (FTC), '[s]tate bans on internet direct shipping represent the single largest regulatory barrier to expanded e-commerce in wine.' *Id.*, at 3." *Granhlom*, 544 U.S. at 467-68.

In discussing the tension between the states' interest in alcohol regulation and the necessity for protecting commerce among the states, the court noted that the three-tier system of regulation is "unquestionably legitimate," but that state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause. *Granholm,* 544 U.S. at 488, *citing, North Dakota v. United States*, 495 U.S. 423, 432, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990), *Bacchus, supra.,* and *Brown-Forman, supra.* "...[T]he Twenty-first Amendment does not supersede other provisions of the Constitution, and, in particular, does not displace the rule that States may not give a discriminatory preference to their own producers...state laws that violate other provisions of the Constitution are not saved by the Twenty-first Amendment." *Granholm*, 544 U.S. at 486.

The Court held that the New York and Michigan statutes involved "straightforward attempts to discriminate in favor of local producers." *Granholm*, 544 U.S. at 489. The Court then determined that neither state regime "advance[d] a legitimate local purpose that [could] not be adequately served by reasonable nondiscriminatory alternatives." *Id., citing, New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 274, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). The court evaluated two primary justifications for restricting direct shipments from out-of-state wineries: keeping alcohol out of the hands of minors and facilitating tax collection. *Id.*[11]

---

[10]FTC, Possible Anticompetitive Barriers to E-Commerce: Wine 5-7 (July 2003)("FTC Report").

[11]Evidence addressing these same concerns form the bulk of the materials submitted on the present motions.

The Court referenced the FTC Report, noting that the subject study found that the 26 states which then allowed direct shipments reported no problems with minors' increased access to wine. The Court noted that minors are less likely to consume wine, as opposed to wine coolers, beer, and hard liquor. FTC Report, p. 12. Minors who decide to disobey the law have more direct means for doing so. And finally, direct shipping is an imperfect avenue of obtaining alcohol for minors who, in the words of the past president of the National Conference of State Liquor Administrators, "want instant gratification." *Id.*, at 33 and n. 137. The Court then stated that even if it were to credit the largely unsupported claim[12] that direct shipping of wine increases the risk of underage drinking, this would not justify regulations limiting only out-of-state direct shipments. *Granholm*, 544 U.S. at 490. The Court also found the states' arguments concerning tax collection to be unavailing. The Court concluded

> The Tax and Trade Bureau (formerly the Bureau of Alcohol, Tobacco and Firearms) has authority to revoke a winery's federal license if it violates state law. BATF Industry Circular 96-3 (1997). Without a federal license, a winery cannot operate in any State. See 27 U.S.C. § 204. In addition the Twenty-first Amendment Enforcement Act gives state attorneys general the power to sue wineries in federal court to enjoin violations of state law. § 122a(b). These federal remedies, when combined with state licensing regimes, adequately protect States from lost tax revenue. The States have not shown that tax evasion from out-of-state wineries poses such a unique threat that it justifies their discriminatory regimes. Finally, it should be noted that improvements in technology have eased the burden of monitoring out-of-state wineries. Background checks can be done electronically. Financial records and sales data can be mailed, faxed, or submitted via e-mail...In summary, the States provide little concrete evidence for the sweeping assertion that they cannot police direct shipments by out-of-state wineries. Our Commerce Clause cases demand more than mere speculation to support discrimination against out-of-state goods. The "burden is on the State to show that 'the *discrimination* is demonstrably justified,'" *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334, 344, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992)(emphasis in original).

---

[12]The defendants in the case at bar have offered evidence to support the contention that direct shipment of alcohol poses an increased risk to youth. Further, the defendants seek to refute the FTC Report of "no problems with minors' increased access to wine" with the affidavit of a father whose son was able to obtain an illegal delivery of alcohol in 1995. *See*, Singer Affidavit.

*Granholm*, 544 U.S. at 492.[13]

### V.  The Constitutional Challenges to SB 82

The plaintiffs challenge four aspects of SB 82.  We will refer to these in shorthand form as (1) the 50,000 gallon limitation; (2) the two-case limit; (3) the in-person requirement, and (4) the at-cost/wholesaler program.  We will address each challenge in turn.

### A. The 50,000 Gallon Limit

The licensing provision, KRS 243.155, permits both in-state and out-of-state small farm wineries to apply for a small farm winery license.  A "small farm winery" is defined as a winery producing wines, in an amount not to exceed fifty thousand (50,000) gallons in a calendar year.  The maximum production limitation of 50,000 gallons per year was unchanged by SB 82.  The requirement that a winery produce wines from grapes, other fruit, or honey produced in Kentucky was eliminated in accordance with *Granholm*'s mandate that small farm winery licenses could not be made available only to in-state wineries.

The plaintiffs object to the amended licensing provision insofar as it makes Kentucky licenses only available to out-of-state wineries who produce 50,000 gallons of wine per year or less.  The plaintiffs argue that the provision affords licensing rights to all Kentucky wineries, as no Kentucky wineries produce in excess of 50,000 gallons per year.  The plaintiffs contend that this provision is a protectionist measure as many out-of-state wineries are excluded by this requirement, and the 50,000 gallon cutoff serves no apparent purpose.  They urge that the nondiscrimination principle requires analysis of the type of business in which the entities are engaged, not their relative size.

---

[13]Again, the defendants in this case offer evidence to illustrate the suspected impact on tax revenues if out-of-state wineries are permitted to ship wine directly to Kentucky consumers.

The plaintiffs cite *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 804 (6th Cir. 2005) and *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997) for the proposition that the analysis of in-state and out-of-state entities requires a focus on whether the entities are "similarly situated." They suggest that size considerations are not pertinent to the inquiry.

First, we note that there is no facial discrimination against out-of-state wineries as the 50,000 gallon limit applies equally to in-state and out-of-state wineries. Further, the limit does not violate *Granholm* inasmuch as there has been no showing that the provision burdens "out-of-state producers or shippers simply to give a competitive advantage to in-state businesses." *Granholm*, 544 U.S. at 472.

We reject the argument that the 50,000 gallon limit must be protectionist and therefore unconstitutional because all of the Kentucky wineries can meet the limitation and so qualify for licenses. Kentucky is perfectly free to offer all of its wineries the benefits afforded by these statutes. By legislative design, the class of advantaged wineries are those that produce 50,000 gallons of wine or less per year. It is only those out-of-state wineries who possess this size characteristic to whom the similar licensing opportunity must be afforded. To argue that all wineries are created equal regardless of size is to ignore rather than to embrace the "similarly situated" analysis. No justification need be shown for the 50,000 gallon limit, as it simply does not give Kentucky wineries a competitive advantage over similarly situated out-of-state producers.

### B.  The Two-Case Limit

KRS 243.155 and 244.165 limit the quantity of wine that a small farm winery can ship to a Kentucky customer. Both statutes limit shipments to two cases of wine per customer per visit to the winery. KRS 243.155 applies to in-state and out-of-state wineries holding a Kentucky small farm winery license. KRS 244.165 applies to all out-of-state small farm wineries whether or not they hold a Kentucky small farm winery license.

The two-case limit applies only to shipment of wine by the winery.  Neither statute limits the quantity of wine which can be purchased and transported from the winery by the customer.

The two-case limit applies to shipments to Kentucky customers from any small farm winery, no matter where located and whether licensed in Kentucky or not.  The provision is evenhanded, as nothing on the face of the statute favors in-state over out-of-state wineries with respect to the two-case limit.  *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994).

The plaintiffs urge that the two-case limit discriminates in practical effect against out-of-state wineries.  The plaintiffs state that "[i]t is obvious that the greater the distance between the winery and the Kentucky consumer, the greater the probability that such Kentucky consumer will use shipping versus direct transport, and the less likely the consumer will be to visit there at all."  Plaintiffs' Combined Reply/Response to Wholesalers, p. 15.  They further footnote that "[i]t is simply an economic truism that local products will always have an advantage and be more available that products from distant states."  *Id.* at n. 14.

In fact, that is precisely the point and explains why the two-case limit does not discriminate in practical effect against out-of-state wineries.  The issue is one of convenience only.[14]  Kentucky customers are free to transport home as much wine from a small farm winery as they wish to purchase.  It is only when the customer seeks the convenience of having the winery ship the wine to Kentucky that the two-case limit comes into play.  The Commerce Clause does not require that customers be convenienced.  Rather, the Commerce Clause prohibits unjustified discrimination against interstate commerce.  There is no advantage afforded to in-state wineries over out-of-state wineries by the two-case limit.  It applies to all shipments to Kentucky customers.

---

[14]This issue stands independent of the analysis of the in-person requirement.

They suggest that an individual desiring to make a large volume purchase of wine from a distant winery would be put to greater expense if forced to travel to the winery of choice and transport it back to Kentucky.  They urge that this burden of added time and expense to transport such a purchase discriminates in practical effect because there would be less driving time and fuel cost involved in transporting a large volume purchase from an in-state winery.  As noted by the plaintiffs themselves, however, local products will always have an advantage and be more available than products from distant states.

KRS 244.165 permits the shipment of limited quantities of wine from out-of-state small farm wineries directly to Kentucky consumers.  This is an exception to the statute's otherwise absolute prohibition on the direct shipment of alcoholic beverages by out-of-state sellers to Kentucky consumers which affords out-of-state wineries the same direct shipment opportunity afforded to in-state wineries.  We do not find that the quantity limitation written into KRS 244.165 burdens interstate commerce.

Laws which regulate evenhandedly will be upheld unless the burden they impose on interstate commerce is clearly excessive in relation to the putative local benefits.  *National Solid Wastes Management Assoc. v. Daviess County, Kentucky*, 434 F.3d 898, 903 (6th Cir. 2006), *quoting, C & A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994); *Pike, supra.*

The Twenty-first Amendment's grant of "virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system" (*Granholm*, 544 U.S. at 488) renders the two-case limitation for small farm wineries easily justified.  The state seeks to maintain the integrity of the three-tier system while simultaneously affording small farm wineries, both in- and out-of-state, the opportunity to bypass that system in a limited way and thereby more effectively penetrate the Kentucky market.  To the extent that the two-case limit could be seen as

imposing an incidental burden on out-of-state wineries,[15] it is clearly outweighed by the putative local benefits from this limitation.  We do not question that the two-case limit promotes the continued utilization of a three-tier system of control which in turn fosters the state's social and economic objectives.  The court therefore rejects the challenge to the two-case limit.[16]

## C.  The In-Person Requirement

The current law mandates that in order for small farm wineries to ship wine to Kentucky customers, customers must purchase the wine in person at the winery.  KRS 243.155 contains this provision.  Prior to the enactment of SB 82, no out-of-state winery could ship wine to a Kentucky customer, regardless of whether the purchase was made in person.  The post-*Granholm* amendments to the statutory scheme made by SB 82 purport to place out-of-state small farm wineries on equal footing with in-state small farm wineries by permitting direct shipment to Kentucky customers under the same terms as afforded to in-state wineries.  This is accomplished through an exemption to the prohibition on direct shipment of alcoholic beverages into the Commonwealth.   KRS 244.165(2) states that a  small farm winery located in another state may ship wine to a customer in Kentucky if (a) the wine is purchased by the customer in person at the winery; (2) the wine is shipped by licensed common carrier; and (3) the amount of wine shipped is limited to two cases per customer per visit.  These requirements for direct shipping mirror those which apply to in-state wineries.  KRS 243.155(2)(g).

---

[15]A proposition that this court does not accept.

[16]The court rejects the contention of the plaintiffs that the two-case limit "violates the extraterritoriality rule." (DN 121, pp. 23-24; DN 192, pp. 23-24).  The cases cited for this argument are wholly inapposite.  The provisions challenged by the plaintiffs concern shipping wine into the Commonwealth.

- 20 -

The plaintiffs do not take issue with the extension of the shipping privilege to out-of-state wineries,[17] as this change was clearly necessitated by *Granholm*.  But the legislature chose to retain the in-person requirement and apply it to all direct shipments of wine to Kentucky customers.  The plaintiffs take exception to the in-person requirement as discriminatory in practical effect.  The in-person requirement purports to regulate evenhandedly, requiring all direct shipment purchases to be made in person.

In the August opinion, this court found that the in-person requirement discriminates in practical effect against interstate commerce.  The defendants appealed the decision, and the matter is stayed in the Court of Appeals at this time.  The defendants pressed for discovery prior to the submission of the briefs currently before us.  The court granted the request.  Thus we have received the expanded and embellished version of the arguments which generated our earlier ruling.  The court has carefully considered the question again in light of the additional materials and argument submitted by the parties.  The court is convinced, however, that the August ruling was correct and remains so with respect to the in-person requirement contained in SB 82.

The in-person requirement is embodied in identical language in the amended KRS 243.155.  It is mirrored in KRS 244.165(2) so as to apply also to out-of-state wineries.  We will therefore restate and incorporate most of the earlier ruling on this issue, adding further discussion or alteration where appropriate.

### 1.  Discrimination in Practical Effect

While all parties agree that the in-person purchasing requirement is not discriminatory on its face, the plaintiffs argue that it, "in practical effect[,] discriminates against out-of-state interests."

---

[17]As noted elsewhere in this opinion, the out-of-state small farm wineries need not be small farm winery licensees in order to ship to Kentucky customers under the exemption contained in KRS 244.165(2).  They do apparently have to meet the definition of "small farm winery" in order to be eligible for the exemption, however.

*See Lenscrafters, Inc.*, 403 F.3d at 802. Specifically, the plaintiffs argue that the in-person requirement presents "an economic barrier which clearly benefits in-state wineries while burdening out-of-state wineries by making it financially unfeasible to effect direct sales to Kentucky residents." Plaintiff's Supplemental Brief Regarding the In-Person Requirement (DN 92), p. 4, reincorporated in Plaintiffs' Motion for Summary Judgment, pp. 15-16 (DN 121). The plaintiffs assert that out-of-state wineries will have to incur a substantial cost in order to meaningfully penetrate the Kentucky market. They suggest that out-of-state wineries will have to establish a physical presence in Kentucky or simply wait and hope that Kentucky consumers visit their locations while traveling. They also maintain that the in-person requirement deprives Kentucky residents of "meaningful access to out-of-state wineries." *Id.* at 5, fn 4.[18]

The defendants, on the other hand, argue that the in-person requirement has nothing more than an "incidental effect" on interstate commerce. State Defendants' Second Supplemental Brief (DN 94), p. 3, reincorporated in State Defendant's Response in Opposition to the Plaintiffs' Motion for Summary Judgment, pp. 22-26 (DN 182).[19] To support this assertion, they point out that Kentucky is bordered by seven other states and that "wineries located in these States are often closer to Kentucky citizens than some distant wineries in Kentucky." *Id.* The examples provided by the defendants, while interesting, fail to examine interstate economic interests as a whole.[20] We agree

---

[18]The plaintiffs analogize this situation to one considered by the *Granholm* Court where the New York statutes required out-of-state wineries to establish a physical presence in New York in order to have the privilege of making direct sale and shipment to consumers. The Supreme Court struck down those laws, noting that "[f]or most wineries, the expense of establishing a bricks-and-mortar distribution operation in 1 State, let alone all 50, is prohibitive." *Granholm,* 544 U.S. at 475.

[19]The court acknowledges that the state has much more to say on this issue in its most recent briefs. The court will address later in this opinion the additional evidence offered as well as the Magistrate Judge's recommended decision from the United States District Court in Maine.

[20]In fact, elsewhere in their brief, the defendants point out the Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive acts or burdensome regulations." State defendants' Second Supplemental Brief (DN 94), p. 4 (quoting *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200 (2nd Cir. 2003). It follows that,

(continued...)

with the plaintiffs' critique of this argument - that it "fails to consider several important points, [namely], that wineries exist in states other than those neighboring Kentucky, that each winery's products are distinctive, and that many of the highly desirable wines come not from Tennessee and Indiana, but from California, Oregon and Washington." Plaintiff's Response to Defendants' Supplemental Brief (DN 95), p. 5. The plaintiffs have shown that Kentucky and its seven bordering states account for a mere 0.6% of the nation's total wine production. *Id.* at 6. Thus, the defendants' examples fail to take into account the impact on "commerce between Kentucky and those states accounting for more than 99% of the nation's annual wine production, including 8 of the top 10 producing states." *Id.* at 7. We note that wine is a unique product. Accordingly, we agree with the plaintiffs that "it is false to presume that a wine consumer would purchase from the closest winery all things being equal." *Id.* Thus, the defendants' argument is flawed. We are convinced that the effect on interstate commerce is not *de minimus.*

In the *Brown & Williamson* case quoted in footnote 20 above, the Second Circuit Court of Appeals upheld a law that "eliminate[d] all sales of cigarettes to New York consumers that do not involve face-to-face sales or the transportation of fewer than four cartons of cigarettes to any one consumer." *Brown & Williamson*, 320 F.3d at 213. Prohibiting "one manner in which cigarettes could otherwise be sold to New York consumers," according to the opinion, did not offend interstate commerce. *See id.* The *Brown & Williamson* court based its decision, *inter alia*, on the fact that the law did "not restrain the flow of goods into New York." *Id.* at 214. In the situation at bar, however, the in-person purchasing requirement does restrain the flow of wines into Kentucky because, as stated above, nearly all wine is produced outside of Kentucky and its neighboring states. Furthermore, there is an important difference between cigarettes and wines. While "no two wines

---

[20](...continued)

in order to determine whether the in-person requirement discriminates against interstate commerce, we must examine the effect beyond Kentucky and its neighboring states.

are created equal,"[21] cigarettes are nearly fungible, with a limited number of national brands.  Thus, New York consumers' access to the cigarette market was not affected in the manner in which Kentucky consumers' access to the wine market is.

It is clear that the in-person requirement amounts to "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc.*, 511 U.S. at 99.  "The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States." *Granholm,* 544 at 472 (citing *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539, 69 S.Ct. 657, 93 L.Ed. 865 (1949)).  Accordingly, we evaluate the in-person requirement using strict scrutiny in order to determine whether the laws  "advance a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  *Id.* at 489 (quoting *New Energy Co. Of Ind.*, 486 U.S. at 278).

## 2.  The In-Person Requirement under Strict Scrutiny

State laws that discriminate against interstate commerce face "a virtually *per se* rule of invalidity."  *Granholm*, 544 U.S. at 476 (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978)).  However, our determination that the laws discriminate against interstate commerce does not end the inquiry.  The *Granholm* court recognized that a discriminatory law is not unconstitutional if it "advances a legitimate local purpose that cannot be served by reasonable non-discriminatory alternatives."  *Id.* at 489 (quoting *New Energy Co.*, 486 U.S. at 278).

The defendants identify "temperance" as the legitimate local purpose, arguing that the current statutory scheme promotes this "core value" of the Twenty-first Amendment.  It is undoubtedly true that the Twenty-first Amendment allows the states to "address the moral concerns

---

[21]Plaintiff's Response to Defendants' Supplemental Brief (DN 95), p. 7.

that underlay Prohibition, freeing them to impose temperance in the consumption of alcoholic beverages." *Beskind v. Easley*, 325 F.3d 506, 513 (4th Cir. 2003). There is also no doubt that the General Assembly may "uph[o]ld the desire of local counties to participate in local option elections." State Defendant's [First] Supplemental Brief (DN 83), p. 2.

The defendants provide three purported legitimate reasons for the challenged provisions, all of which are said to be "core values" of the Twenty-first Amendment. First, the defendants argue that the in-person requirement promotes temperance, indicating that the three-tier system was designed to prevent "an excess of alcohol consumption." State Defendants' Reply to Second Supplemental (DN 96), p. 8.

While Kentucky has a well-established three-tier system in place, the General Assembly has clearly expressed its intent to allow wineries of a certain size to bypass that system. We are not to evaluate the wisdom of such policy decisions; but, under the mandate of *Granholm*, we must ensure that such exceptions apply evenhandedly. We leave the three-tier system undisturbed in any meaningful way. Striking the in-person requirement merely ensures that the legislatively created exception granted to small and farm wineries applies evenhandedly to both in-state and out-of-state producers. *Accord, Granholm*, 544 U.S. at 488 ("The states argue that any decision invalidating their direct shipment laws would call into question the constitutionality of the three-tier system. This does not follow from our holding.").

The battle cry of the defendants remains that the plaintiffs seek "to destroy the entire three-tier system." State's Response, p. 29 (182). It bears repeating that the three-tier system remains unaffected in any meaningful way by this ruling. The exception written in by the legislature to the absolute prohibition on direct shipment of alcoholic beverages into the Commonwealth is limited only to wines from wineries who produce 50,000 gallons of wine or less per year. Additionally, this boutique market may ship no more than two cases of wine per sale to a Kentucky customer.

- 25 -

Unfortunately, the Commonwealth seeks to have its wine and drink it too. It wishes to make a small inroad into the complete prohibition on direct sales of alcoholic beverages for the benefit of Kentucky small farm wineries who have not been able to effectively and/or economically market their products through the wholesale market.[22] The Commonwealth purports to respond to the call of *Granholm* to ensure that such benefits are evenhandedly applied to all small farm wineries. However, the Commonwealth runs afoul of the Commerce Clause by imposing a condition on the out-of-state wineries which makes it economically unfeasible and in some instances impossible for those wineries to utilize that benefit. The direct sale benefit may not come in the form of mere lip service to the "evenhanded" requirement. We must view the application of the statutes in the real world. The particular market to which these statutes are addressed is the national small farm winery market. The vast majority of the market which this benefit must serve is on the West Coast of the United States. A condition such as the in-person requirement applied in the real world renders the benefit a nullity for virtually all of the market outside of Kentucky. It is true that the Commerce Clause does not require that out-of-state wineries be granted the exact same economic advantages as in-state wineries. *See, New Energy*, *supra.* at 278. However, the in-person requirement as it operates here is protectionist and cannot stand. The court rejects the contention that this is a matter of mere geographic happenstance.

The defendants urge that we follow the reasoning in the recommended decision in the case of *Cherry Hill Vineyard, LLC v. John E. Baldacci, Governor of the State of Maine*, No. 1:05-CV-

---

[22]The defendants urge that because Cherry Hill has a wholesaler in Kentucky who is "doing a very nice job for us," Sweeney depo., p. 19, that it cannot prove that it will suffer any economic injury through imposition of an in-person requirement. The fact that Cherry Hill has sought out a wholesaler, as did Huber Winery, evidences nothing, as it is a certainty that these wholesalers are not distributing their wines fee-free. Further, until the effective date of SB 82, the statutory scheme did not permit out-of-state wineries to sell their wines in Kentucky any other way. If anything, this is evidence of the out-of-state wineries desire to market their wines here.

00153-GC.[23]  The magistrate judge found that the statutory scheme at issue in Maine did not discriminate against out-of-state farm wineries because the in-person requirement applied equally to in-state and out-of-state wineries, and the plaintiffs had failed to present any evidence of any situation in which an in-state winery could lawfully ship its product by mail to a Maine consumer. The statutory scheme in Maine differs in significant respects from the Kentucky scheme.  The comments of the parties concerning the Maine opinion are relegated to footnotes in their briefs.  No further discussion is warranted here.

Having concluded that the in-person requirement discriminates in practical effect against out-of-state wineries, we must determine whether the provision should nevertheless be upheld as advancing a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.  *Granholm*, 544 U.S. at 489.

The defendants argue that the in-person requirement promotes temperance by preserving the local option laws currently in place in several territories in Kentucky.  Allowing Kentucky residents living in dry territories to order wine via internet, phone or mail order, according to the defendants, would "obviate" the prohibitions under current local option laws.  State Defendants' Reply to Second Supplement Brief (DN 96), p.8.  We disagree.

The small farm winery license may co-exist with local option laws.  Nothing in the small farm winery license provides such licensees with a privilege to violate local county ordinances.  The in-person purchasing requirement simply does not, and cannot, ensure that dry territories remain alcohol-free.  Even if the requirement did further the goal of preserving the integrity of the dry territories, it is not the least burdensome way of doing so.  For instance, we accept the plaintiffs' suggestion that a less burdensome means of ensuring the continued integrity of dry territories would be for the State, as part of the process of licensing small farm wineries, to specifically identify the

---

[23]This recommended decision has not been adopted by the district court as of this writing.

counties, cities and/or zip codes in Kentucky to which shipments cannot be made.  *See,* Plaintiff's Supplemental Brief (DN 92), p. 9, fn 6.

Second, the defendants maintain that the in-person requirement increases the risk of underage drinking.  A similar argument was rejected in *Granholm* where the Supreme Court dismissed the concern that internet purchasing by minors would pose a serious problem.  The *Granholm* Court found that minors are less likely to purchase wine than beer or liquor, that they have a more direct means of obtaining the alcohol and that they are unlikely to have wine shipped because they "want instant gratification."  *Granholm*, 544 U.S. at 490 (citations omitted).  Despite that conclusion, the Court assumed *arguendo* that direct shipping of wine would increase the risk of underage drinking, but found, nonetheless, that there were less burdensome alternatives to protecting that interest.  For instance, the states could require "an adult signature on delivery and a label so instructing on each package."  *Id.* at 490.  *Granholm* compels the same conclusion at bar: the in-person requirement is not narrowly tailored to achieving the goal of keeping wine out of the hands of minors.

The defendants argue that the in-person sales requirement is motivated by concerns for tax revenue and that removing that requirement may result in a "potential loss of revenue in excise taxes."  State Defendants' Reply to Plaintiff's Second Supplemental Brief (DN 96), p. 9.  The Wine Wholesalers echo this argument, predicting a heavy loss in sales and use tax if internet wine sales are permitted.  Intervening Defendant's Reply to Plaintiff's Second Supplemental Brief (DN 97), p. 8.  The Wine Wholesalers' argument, however, seems to assume that internet sales would be permitted with no restrictions.  Such is not the case.  Only small farm wineries would be permitted to ship directly to consumers, and in the quantities and the manner dictated by statute.  The rest of the three-tier system remains fully intact.

Furthermore, *Granholm* rejected a similar tax argument, concluding that the defendants had "not shown that tax evasion from out-of-state wineries pose[d] such a unique threat that it justife[d] their discriminatory regimes."  *Granholm*, 544 U.S. at 492.  Even assuming that the defendants had

adequately demonstrated a legitimate concern regarding the loss in tax revenue, "their regulatory objectives can be achieved without discriminating against interstate commerce." *See id.* For instance, the State could require licensees to "submit regular sales reports and to remit taxes." *See id.*

The defendants urge that Congress has endorsed in-person purchase requirements for shipment of wines between states. They cite 27 U.S.C. § 124(a) for this proposition. Contrary to the assertion of the defendants, this statute is not a generalized federal direct shipping law. It merely states that a person who lawfully purchased wine in one state but was prevented by Federal Aviation Association regulations from carrying it on a plane, could ship it to another state by common carrier if certain conditions are met. To interpret this statute as a federal sanctioning of in-person purchase requirements is unwarranted.[24]

The defendants have offered affidavits and voluminous data to establish that the Commonwealth has legitimate concerns in preventing the abuse of alcohol. They contend that the "sense of the people" (Ky. Const. § 261) in the societal norms and values toward alcohol is evidenced by the adoption of the three-tier system. The evidence offered by the defendants is undisputed to the extent that it shows significant problems with underage drinking, alcoholism, and a whole host of societal evils which are borne of alcohol abuse. As noted by Donna Wiesenhahn, a certified prevention professional employed by Bluegrass Regional Mental Health-Mental Retardation Board, one of the main goals of alcohol abuse prevention is to discourage the development of societal norms that treat alcohol use among underage individuals in a cavalier manner. Wiesenhahn Aff., ¶ 14. Preventionists try to employ "environmental strategies" which restrict the availability of, and access to, alcohol. *Id.* at ¶ 15. Wiesenhahn concludes that sales of

---

[24]The defendants also assert that thirty-nine states require in-person purchases, citing a chart from the UPS wine shipment program. From the court's review of this document, it appears that thirty-two states allow direct shipment with no such requirement.

alcohol over the internet present a serious challenge to the detection and prevention of underage consumption. *Id.* at ¶ 11-13. There is no question that such problems have existed as long as alcoholic beverages have been a consumable commodity. There is also no question that Kentucky has legitimate concerns about protecting its citizens and fostering strategies which promote temperance. However, this begs the question before the court. The matter we must consider is whether the in-person requirement advances this legitimate local purpose and whether the purpose can or cannot be served adequately by reasonable nondiscriminatory alternatives.

The statistical evidence offered concerning access to alcohol by youth is generalized. For example, Wiesenhahn states that "face-to-face transactions are especially important to control illegal purchases of alcohol," and that "studies have usually found that when alcohol is less available, less convenient to purchase or less accessible, consumption and alcohol-related problems are lower." Wiesenhahn Aff., ¶ 23. Taking these statements as true still does not address the impact of this particular requirement on this particular locale. Generalizations are insufficient to address this issue.

The only particularized evidence concerning the impact of direct wine sales on community alcohol abuse problems is the FTC Report cited by the Supreme Court in *Granholm* and quoted herein. While the defendants urge that the study is "seriously flawed," it is, in fact a national agency study which comments directly on the issue at hand. The report states that the twenty-six states that allowed direct shipments reported no problems with minors' increased access to wine. FTC Report, p. 34.

The new challenges faced by law enforcement posed by the increased availability and use of the internet and other means of remote communication are well known to this court.[25] A "new frontier" in the cyberworld exists, creating new issues in law enforcement. Anonymity in the use of internet technology clearly poses new aspects to old problems. However, as the defendants' own

---

[25]Child pornography cases often involving internet use are increasingly on the court's criminal docket.

evidence establishes,[26] mechanisms are in place, and continue to be developed to identify end users of such technology for purposes of verification of age, identity and sobriety.  As the statistical evidence establishes, the programs put in place by law enforcement and community-based organizations and by local option laws have, to-date, offered less than perfect solutions to the problems of underage drinking and alcohol abuse.  There has been no showing that the  in-person requirement for the shipment of wine from small farm wineries advances the purpose in any measure in addressing the problem at hand.  The exemption to the absolute prohibition on direct sales of alcoholic beverages in Kentucky constitutes an exceedingly narrow inroad into the established system.  The Commonwealth had every opportunity to eliminate direct sales entirely, but chose not to do so.  The FTC Report notes that wine is not the alcoholic beverage of choice among youth.  The particular market targeted by Kentucky's statutes is the small farm winery market.  There is no evidence supporting the contention that youth of Kentucky will seek out shipment of wines in this boutique market if the in-person requirement is struck down.  Further, there is no evidence that small farm wineries in- and out-of-state, and their shippers, cannot or will not comply with the law regarding deliveries to Kentucky customers.  In fact, the evidence indicates that significant efforts are being made to so comply.[27]

The principal problem faced by the defendants herein is that the legislature chose to permit direct shipment of alcohol.  The choice to do so has thus taken us down the current road.  We conclude that the in-person requirement is not narrowly tailored to achieving the goals identified by

---

[26]Through the Federal Express and UPS wine shipment programs. [Documents filed under seal.]

[27]The court is unpersuaded that the Singer affidavit supports the defendants' position.  The purported purchase was made five years ago.  In light of the shipper programs and verification software technologies now being utilized, the court is unconvinced that the Singer affidavit is now of much evidentiary value.  The Wiesenhahn Affidavit also refers in general terms to a study conducted by Gonzaga University students.  There is no detail nor any reference information concerning this study.

the defendants, and that those provisions are unconstitutional as discriminating against interstate commerce.

### D.  The At-Cost/Wholesaler Program

SB 82 added a new section to KRS Chapter 260 establishing a Kentucky small farm wineries support fund.  KRS 260.175.  The statute provides an economic incentive for wholesalers to consider marketing small farm winery wines.  Wholesalers can apply to participate in the Kentucky Grape and Wine Council's wine distribution program whereby the wholesaler agrees to distribute the wine produced by small farm wineries licensed under KRS 243.155 and to sell to retailers for the same price the wholesaler paid for the wine; that is, without a mark-up.

### 1.

As noted by the plaintiffs, the purpose of the Kentucky Grape and Wine Council is "to promote and facilitate the development of a Kentucky-based grape, grape product, and wine industry in the Commonwealth of Kentucky, KRS 260.165(1) and 260.166(1).  The statutes mandate that "to the extent that funds are available, [the Kentucky Grape and Wine Council] shall...[p]romote the sale of grapes, grape products, and wine for the purpose of maintaining and expanding present markets and creating new markets for Kentucky grapes, grape products, and wine..."  KRS 260.166(2).

The plaintiffs urge that the support fund provisions discriminate against out-of-state small farm wineries because the program can only be implemented to assist in the distribution of the wines of small farm wineries in Kentucky.  The court rejects this challenge, as the plaintiffs misread the provisions.

The purpose of the Kentucky Grape and Wine Council is to promote the Kentucky grape and wine industry.  There are no Commerce Clause implications in a state's decision to sponsor and encourage economic development of its industries.  The plaintiffs contend that because of the statutory directive of KRS 260.166, the Kentucky Grape and Wine Council is prohibited from expending funds that benefit out-of-state wineries.  They urge that such action would be at cross-purposes with the Council's mission.

KRS 260.166(2) does not state that the Council shall expend funds *exclusively*[28] in relation to Kentucky wineries.  Rather, its goal is the maintenance and expansion of present markets and the development of new markets for Kentucky grapes and wines.  KRS 260.175 seeks to implement this purpose by promoting at-cost resale by wholesalers.  Specifically, wholesalers must agree to distribute and sell at-cost the wine produced by small farm wineries licensed under KRS 243.155.  Small farm wineries licensed under KRS 243.155 includes both in-state and out-of-state wineries who hold such a Kentucky license.

This provision does not discriminate against out-of-state wineries inasmuch as both in-state and out-of-state wineries can apply for Kentucky licenses.  The wine distribution program is not limited to wines produced by small farm wineries in Kentucky.  Rather, it is limited to wines produced by Kentucky small farm winery licensees.  KRS 260.175(2)(d).  No out-of-state winery is required to be licensed in Kentucky.  But out-of-state wineries that are so licensed are eligible to receive the benefit of distribution and at-cost sale under the program.  Kentucky small farm wineries are not advantaged by the provision, as they must also be licensed under 243.155 in order to be eligible for this benefit.

The contention is without merit that the provision of any benefit to out-of-state wineries under the wine distribution program contravenes the purpose of the Council.  The statute makes the

---

[28]The plaintiffs emphasize this term, despite the fact that it does not appear in the statute.

benefit available to Kentucky licensees on the basis of their licensed status rather than their location. Further, were the benefit made available only to licensees located in Kentucky, it would appear to be a discriminatory provision. We cannot conclude that the legislature intended to run afoul of the Commerce Clause in meeting the stated purpose of the Council. The court rejects this challenge to the at-cost wholesaler program.

2.

SB 82 created a new small farm winery wholesaler's license. KRS 243.030(43). KRS 243.154 states that a small farm winery wholesaler's licensee may purchase, receive, store or possess wine produced by small farm winery licensees, and may sell the wine at wholesale from its licensed premises. The plaintiffs urge that this new license discriminates against out-of-state wineries because Kentucky wineries can act as their own wholesalers while out-of-state wineries cannot.

The amended version of KRS 243.110 appears to resolve the matter. The statute prohibits a small farm winery licensee from also holding a small farm winery wholesaler's license, as both licenses fall under the provisions of KRS 243.030. KRS 243.110 states that "[e]xcept as provided in subsection (2) of this section [which does not apply to small farm winery licensees], each kind of license listed in KRS 243.030 shall be incompatible with every other kind listed in that section and no person or entity holding a license of any of those kinds shall apply for or hold a license of another kind listed in KRS 243.030."

Additionally, the amended language of KRS 243.110(4) makes clear that an applicant may not evade the prohibition by applying for an incompatible license under another name or entity created to circumvent the provision:[29]

---

[29]The State refers to this tightening of the language of the subsection as an effort to eliminate the "strawman" loophole.

> (4) A person or entity shall not evade the prohibition against applying for or holding licenses of two (2) kinds by applying for a second license through or under the name of a different person or entity.  The state director shall examine the ownership and management of applicants, and shall deny the application for a license if the applicant is substantially interested in a person or entity that holds an incompatible license.

The new version clearly indicates that mere technical compliance with the licensing provisions is insufficient.  Persons or entities may not obtain a license, for example a small farm winery wholesaler's license, if they share a substantial interest in a person or entity that holds an incompatible license, such as a winery that holds a small farm winery license.  It is the nature of the relationship between persons or entities holding and applying for the licenses, rather than merely the corporate or individual name which appears on the application, which governs whether the director will grant an application for a license.  There does not appear to be any question but that the language of the statute means what it says, and small farm winery licensees will not be permitted to obtain small farm winery wholesaler's licenses.

Under the former version of KRS 243.155, a privilege granted to the small farm winery licensee was the ability to sell and transport its wine to retail package or retail drink license holders, if the wine had been offered for sale to wholesale license holders and the wine was sold at the wholesale price to the retail package or retail drink license holders.  Formerly KRS 243.155(d).  After the *Granholm* decision, the legislature determined to eliminate the privilege for Kentucky small farm wineries through SB 82.  Thus there is no privilege for any small farm winery to sell directly to retail package or retail drink license holders.  The small farm winery wholesaler's license and the at-cost distribution program for wholesalers replace the self-distribution privilege.  Small farm wineries will be able to market their wines to retail package and retail drink license holders through a licensed wholesaler or a small farm winery wholesaler at an at-cost rate.[30]  As all small

---

[30]The ability to market small farm winery wines at an at-cost rate through any wholesaler depends upon that wholesaler's willingness to participate in the wine distribution program.  The small farm winery wholesaler license creates

(continued...)

- 35 -

farm wineries must go through some form of wholesale mechanism to make retail package and retail drink sales, there is no constitutional violation.

Conclusion

The court has evaluated the new statutory scheme put into place by SB 82.  The new legislation has, for the most part, resolved the constitutional infirmities addressed by the *Granholm* decision.  The court has rejected all challenges made by the plaintiffs but one.  The court determined in the August, 2006 opinion and has reaffirmed herein that the in-person requirement in KRS 243.155 and 244.165 is unconstitutional as it discriminates in practical effect against out-of-state small farm wineries, and has not been shown to advance the legitimate local purposes asserted that cannot be adequately served by reasonable nondiscriminatory alternatives.  For these reasons, the court will strike the in-person requirement from both statutes and uphold the remainder of the statutory scheme.  A separate order will be entered this date in accordance with this opinion.

---

[30](...continued)
a new class of wholesaler whose sole concern, unlike the large wholesale operations, is the distribution of small farm winery wines.  As noted earlier, any wholesaler who agrees to participate in the wine distribution program agrees to distribute wines produced by small farm winery licensees.  These wineries may be in-state or out-of-state.  Thus, the at-cost wholesale opportunity for retail package and retail drink sales is equally available to in-state and out-of-state small farm winery licensees.